E. M. COLLINS, EX'X, v. D. O. WARREN ET AL.

(Case No. 933.)

1. ESTATES OF DECEDENTS — ADMINISTRATION — CLAIM AGAINST ESTATE — DEVASTAVIT.— Suit was begun in September, 1874, by appellant, as executrix, upon the bond of an administrator, to recover the amount of a claim held by her against the estate. The administrator was appointed in 1869, and then gave the bond sued on, and filed inventory. Facts constituting, if true, a *devastavit* were alleged. In 1869 the claim sued on was approved and allowed. No time was specified when the acts of *devastavit* occurred. In 1873 plaintiff had moved in the county court to have her debt paid; but learning then of the breaches of the administrator's bond and of his death, she proceeded no further with her motion. Afterwards, an administrator *de bonis non* sued the sureties on the bond for waste and *devastavit*, which appellant charged was in the interest of the defendants in this cause, who were the sureties on the bond. A special exception to the petition was filed on the ground that there was no law in force at the time authorizing the suit. *Held:*

(1) That the statute in force when the administrator's bond was executed would have authorized the suit.

(2) That statute was repealed by the act of August, 1870.

(3) The proviso in the repealing law, to the effect "that no remedy to which a creditor is entitled under the provisions of the laws heretofore in force shall be impaired by this act," does not apply to creditors suing for a breach of a bond occurring since the enactment of the repealing statute.

(4) The plaintiff having failed to state when the breaches of the bond occurred, the presumption must be indulged that it was after the enactment of the repealing statute. This presumption was strengthened by the fact that such breaches seem not to have been known to plaintiff until 1873.

(5) The repeal of a statute leaves unaffected all rights which by contract have vested under the original statute.

(6) The new law cannot be construed to take away all remedies to enforce antecedent rights, but must leave a substantial remedy.

(7) The act of August, 1870, provided an ample remedy for the enforcement of the right claimed.

(8) Provisos in an act must be construed strictly, so as to allow them to take no case out of the enacting clause which does not fall within its terms.

(9) The proviso of the act of August, 1870, included only such remedies as the creditors were fully entitled to at the date of its passage. It did not embrace cases where the creditor's cause of action had not accrued, no breach of the bond having occurred.

(10) The action could not be sustained.

---

---

2. PLEADING — DEMURRER.— If a pleading states enough to enable the court to see that a good cause of action or ground of defense exists, however defectively stated, the defectiveness of the averments cannot be taken advantage of by general demurrer; but, in all cases, sufficient must be stated to enable the court to see that a good cause of action does exist.

3. SAME.— A petition by a creditor against the sureties of an administrator, which alleged a *devastavit* by the administrator, without stating when it occurred, is bad on general demurrer, when by the laws in force the suit could not be sustained, if the *devastavit* occurred after a law was enacted, pending the administration, which prohibited, in effect, the institution of the suit.

APPEAL from Leon. Tried below before the Hon. Spencer Ford.

Appellant, as one of the creditors of D. O. Warren's estate, with a claim established, filed suit in the district court of Leon county, May 29, 1874, against appellees, as the representative of W. H. Warren, the former administrator, then deceased, and his sureties on the administration bond, alleging *devastavit*, etc., and by amendment that the administrator *de bonis non* of said estate had been appointed at the instance and in the interest of the appellees, and had neglected to sue on the administrator's bond until after her suit was filed, and prayed judgment against appellees for the full amount of her debt. Appellees filed general and special exceptions to plaintiff's petition, because there was at that time an administrator *de bonis non* of the estate, and a suit by him pending in that court on the former administrator's bond against appellees for all the property that came into the hands of the said former administrator, and concluded with a general denial.

Upon the trial the court sustained the exceptions of defendants, to which, ruling plaintiff excepted and prosecuted this appeal, resting the case upon the following assignment of error:

" The court erred in sustaining defendants' exceptions and dismissing the cause."

*Nunn, Williams & Corry*, for appellant, that a pleading demurred to is not construed most strictly against the pleader, cited: Frosh, v. Swett, 2 Tex., 485–490; Wells v. Fairbanks, 5 Tex., 586; Warren v. Bailey, 7 Tex., 517; Wallace v. Hunt, 22 Tex., 650; Lambeth v. Turner, 1 Tex., 367; Williams v. Warnell, 28 Tex., 610; Rule 17 for Dist. Court Practice.

That the character of the plea will be determined, not by its designation, or name, given by the pleader, but by its contents, they cited: Lambeth v. Turner, 1 Tex., 367; 1 Chitty on Pleading, side pages 663–4; Stephen on Pleading, side pages 140, 141.

There was no special demurrer filed. Such a plea must point out

the special defect — citing: Boynton v. Tidwell, 19 Tex., 121; Black v. Drury, 24 Tex., 292; Zacharie v. Bryan, 2 Tex., 276; Williams v. Bradberry, 9 Tex., 489; Mayfield v. Averitt, 11 Tex., 141; Williams v. Wright, 20 Tex., 503; Rule 18 for Dist. Court Practice.

(Counsel filed an able and exhaustive argument on their motion for rehearing.)

*M. Suratt* and *James C. Walker*, for appellees, cited, on the effect of the proviso to the act of 1870: P. D., art. 5771; Roberts v. Yarboro, 41 Tex., 452; Tyson v. Britton, 6 Tex., 224; Green v. Rugely, 23 Tex., 542.

Plaintiff's petition did not state a cause of action — citing: P. D., arts. 1341–7, 1376, and arts. 1333, 1334, 1374; Lockhart v. White, 18 Tex., 102; Green v. Rugely, 23 Tex., 539; Gray v. McFarland, 29 Tex., 163; Ansley v. Baker, 14 Tex., 607; Boulware v. Hendricks, 23 Tex., 668.

WILLIE, CHIEF JUSTICE.— This suit was brought to the September term, 1874, of the district court of Leon county, by the appellant as executrix of Thos. P. Collins, deceased, upon the bond of W. H. Warren, administrator of D. O. Warren, deceased, to recover the amount of a claim held by her against said estate. The allegations of the appellant's pleadings are substantially as follows: That W. H. Warren was appointed such administrator in February, 1869, and qualified and gave bond in accordance with the statutes then in force. That he filed an inventory of the estate March 29, 1869, wherein he charged himself with property of the value of $9,251.40, but failed to report a large amount that should have been placed upon the inventory; and that he had procured patents for a large quantity of lands belonging to the estate which he had failed to report, and for which he had never accounted. That he had sold property of the estate sufficient to pay all its debts, and yet refused to pay plaintiff's claim, and had fraudulently conveyed away valuable lands of the estate. An amended petition set out the *devastavit* more specifically, and in addition charged the administrator with the appropriation of the estate's money to his own use, and with the failure to take notes with good security for the purchase money of property sold by him. Appellant's claim for about $5,000 was presented and allowed by the administrator, and approved by the county court in the year 1869, but no date was given to the various acts by which the administrator had wasted the estate. In 1873 she filed a motion in the county court to have her debt paid, but

before this was acted upon she became informed of the breaches of the bond, and of the death of W. H. Warren, which occurred in 1873, and proceeded no further with her motion. A subsequent amended petition alleged the appointment of an administrator *de bonis non* and the commencement of a suit by him upon said bond, and it was charged that the appointment was in the interest of defendants. She prayed judgment against appellees for the full amount of her debt. To these pleadings a general demurrer and also special exceptions were filed by appellees, the special exceptions being to the effect that, if liable at all, defendants were liable to a suit by the administrator *de bonis non*, and that there was no law in force at the time this suit was brought which authorized it. The district court sustained the demurrer and exceptions and dismissed the cause, and from this judgment the executrix appealed to this court, assigning as error the ruling of the court below sustaining the demurrer and dismissing the cause.

The statute in force when the bond was executed provided that, for breaches of such obligations, suit might be brought against the administrator and his sureties by any creditor of the estate. Pas. Dig., art. 1374. This statute was repealed by the act of August, 1870 (Pas. Dig., art. 5771), but the repealing section provided that "no remedy to which a creditor is entitled under the provisions of the laws heretofore in force shall be impaired by this act." A similar provision is contained in the act of 1873, p. 175, section 304. The dates of the several breaches of the bond are not found in the petition, but taking the allegations most strongly against the pleader, the inference is that they occurred subsequent to the passage of the act of 1870. This is to be presumed also from the fact that they were not known to the executrix till 1873. It is to be inferred also from the fact that an amendment alleging that such breaches occurred prior to August, 1870, would have destroyed the force of the demurrer, and yet no such amendment was made; and the whole argument of her counsel in this court involves an admission that they did not occur during the existence of the act of 1848. Hence the question for our determination is: Does the proviso in the act of 1870 save to a creditor the right to sue upon an administrator's bond made previous to its passage, when the cause of action thereon did not arise until after that time?

The repeal of a statute leaves unaffected all rights in the nature of contract which have vested under the original statute. Sedgw. Const. & Stat. Law, 113. As to the effect of such repeal upon remedies existing under the former law, some difference of opinion

has existed, but the weight of authority seems to be that, without some saving clause contained in the repealing law, remedies existing under the former statute must give way to those provided by the new one. The new law cannot take away all remedies previously existing, but must leave a substantial one according to the course of justice. Dwarris on Statutes, 474; Cooley on Lim., 289. If this is done, although the new remedy may not be so speedy, so satisfactory or so efficacious, the repealing statute is valid. There is a greater difference of opinion as to whether or not, with the repeal of a remedy, all suits commenced under the repealed law must necessarily fall. With the law upon the subject in this unsettled condition, the effect of section 304 of the act of 1870 upon the previous remedies of creditors would have remained somewhat in doubt had no saving clause been inserted. This act provided new and ample means of enforcing debts against an estate. They were in many respects different from those known to the former law, but were in all respects efficacious and sufficient. Id., secs. 223, 224; also, Pas. Dig., art. 5738. It would follow, then, that had section 304 contained no saving clause, it would have been a matter of some doubt which remedy should be pursued by a creditor who had a cause of action on the administrator's bond arising previous to the act of 1870. This cause of action accrued the moment that the *devastavit* was committed, but not before. No suit could be brought until that time; the creditor was not entitled to pursue the bondsmen until the condition of the bond was broken. When that occurs the right to pursue the remedy immediately attaches. What effect does the saving clause in the three hundred and fourth section have upon their right to prosecute such a suit?

It is a proviso and subject to the rules which govern such. A leading principle is that provisos must be construed strictly, so as to allow them to take no case out of the enacting clause which does not fall within its terms. Tyson v. Britton, 6 Tex., 224; Roberts v. Yarboro, 41 Tex., 252. If we apply this rule in all its strictness, this proviso includes only such remedies as the creditors were fully entitled to at the date of its passage. It would include in its terms all cases where the breach of the bond had actually occurred, and a cause of action had thereby accrued to the creditor, whether suit had been commenced or not. These were precisely the cases which might have been left in some doubt had no such saving clause been inserted. Such doubt was set at rest by the language of the proviso. It would not embrace cases where the creditor's cause of action had not accrued, no breach of the bond having occurred. He was not

then entitled to sue, to have and use the remedy provided by the previous law. There was no doubt as to the effect that the repeal of the statute would have upon his rights of action; a right which was yet to be vested, and that had no existence at the time of its passage. As to the former class of cases, the legislature was settling a question of doubt; it left it where it was free from all uncertainty and needing no legislation. If the legislature had intended to include causes of action arising in the future, the more appropriate expression would have been, "no remedy to which a creditor is now and may hereafter be entitled," etc. As it is, we are of opinion that the language does not include remedies which the creditor was not in a condition to pursue at the date of the passage of this saving clause. The appellant could not, at that time, have brought a suit upon the bond of W. H. Warren, and hence was not within the benefits of the proviso. The court did not err in sustaining the demurrers, and as the plaintiff asked no leave to amend, the suit was properly dismissed.                                AFFIRMED.

[Opinion delivered February 16, 1883.]

### ON MOTION FOR REHEARING.

WILLIE, CHIEF JUSTICE.— Among other grounds for a rehearing urged by the appellant in his motion, it is alleged that the substituted record, filed in the cause at this term, does not contain a full statement of the pleadings upon which appellant relied in the court below. That these pleadings show that she averred the appointment of an administrator *de bonis non* upon the estate of D. O. Warren, deceased, but leave out allegations to the effect that such appointment was made for the fraudulent purpose of preventing any action being taken to recover upon the bond of W. H. Warren, the former administrator. It is the recollection of counsel that such allegations were contained in the pleadings of the plaintiff below, but owing to the destruction of the records of the district court, a copy of all the papers filed in the cause cannot be obtained.

Appreciating as we do the difficulties under which counsel labored in getting up a full and perfect transcript for substitution in the cause under the circumstances, we have concluded to grant the rehearing prayed for. The judgment heretofore rendered will be set aside, and leave given to substitute such other papers as may be shown to the satisfaction of the court to have formed part of the record below, after the usual notice to the opposite parties or their counsel. The submission of the cause will be also set aside, and a re-argument

ordered upon all the points presented by the record at the next term of the court in Galveston, and the cause will stand continued.

REHEARING GRANTED (March 30, 1883).

ON REHEARING.

WATTS, J. COM. APP.— From occurrences over which neither counsel nor the court had any control, this appeal has been greatly delayed and counsel embarrassed in securing anything like a complete record of the proceedings had in the court below. It appears that the original transcript was destroyed by fire January 13, 1882, and that the greater portion of the original papers in the court below seem to have been destroyed also by fire, before another transcript had been prepared. As might have been expected under such circumstances, the record in many particulars is so incomplete as to render it doubtful as to what did really occur upon the trial below.

Ordinarily the presumption of regularity in the proceedings will be indulged, and the burden rest upon whoever asserts the contrary to point out the irregularity and show it by the record. Upon him devolves the duty of securing a complete record of the proceedings had below, and having the same filed in this court, and generally no intendment will be indulged in his favor in supplying defects in the record.

But in a case like this the court will indulge in liberal intendment, so that the ends of substantial justice may be attained.

It is claimed by appellant that the exceptions sustained to the petition in the court below amounted to nothing more than a general demurrer, and that in reviewing that ruling it should be considered in the same light as if a general demurrer only had been interposed to the petition and sustained by the court.

This is an action by a creditor of the estate of D. O. Warren, deceased, upon the bond of the former administrator of the estate for a *devastavit*. It is alleged that the administrator qualified in March, 1869, and died in 1873. While there are several breaches of the bond alleged, the respective dates at which such breaches occurred are not stated.

Under the probate act of 1848 (Pasch. Dig., arts. 1374, 1375 and 1376), it is conceded that a creditor might maintain such an action for a *devastavit*. But appellee claims that the probate act of August 15, 1870, which repealed the act of 1848, gives full power to the administrator *de bonis non* to maintain suits against his predecessor individually or on his bond, not only for the unadministered assets, but

for a *devastavit*, and impliedly inhibits such suits by the creditor of the estate.

While appellant contests that proposition, yet she claims that if it should be conceded, that nevertheless the repealing clause of the act of 1870 saved the action to her by the proviso: "That no remedy to which a creditor is entitled under the provisions of the laws heretofore in force shall be impaired by this act." Pasch. Dig., 5771. And that notwithstanding there are no allegations in her petition fixing the breaches of the bond at a time prior to the passage of the act of 1870, nevertheless, as the exceptions sustained to the petition amounted in legal contemplation to a general demurrer, " that if in any possible aspect of the plea a case is stated," then the general demurrer ought to have been overruled.

Such is not the rule as we understand it. In Williams *v.* Warnell, 28 Tex., 612, it is said that "The legal effect of a general demurrer is to admit the facts pleaded to be true, but to deny that they constitute a cause of action or ground of defense. And the only question which will be considered under it is, whether any cause of action or ground of defense is disclosed in the pleadings demurred to. Consequently, if sufficient be stated to enable the court to see that a good cause of action or ground of defense exists, however defectively stated, the insufficiency or defectiveness of the averments cannot be taken advantage of on general demurrer."

The rule here announced is strictly in harmony with previous decisions of this court, and is abundantly sustained by text-writers.

Now, by applying this rule to the case which appellant claims is made by the record, it will be seen that even a general demurrer ought to have been sustained to the petition, upon the theory of the case now under consideration.

Observe that, by this rule, to authorize the overruling of the general demurrer, *sufficient matter must be stated* to enable the court to see that a good cause of action *exists*. It is not, as contended, that sufficient matter must be stated to enable the court to see that by possibility a cause of action might exist. But the rule is imperative that the allegations must be such as to enable the court to see that a good cause of action *does exist*.

Here it appears that W. H. Warren was acting as the administrator of the estate of D. O. Warren about four years and six months; that one year and a half of that time was prior, and the other three years subsequent, to the passage of the act of 1870. Then, assuming that a creditor could not maintain such suit under the latter act, the breaches of the bond are alleged to have occurred some time

during the four years and six months in which W. H. Warren was the acting administrator of the estate. Certainly from these allegations the court could not say that a good cause of action did exist. All that could be determined by the court is, that possibly the breaches complained of may have occurred before August 15, 1870, and if that is true, then a cause of action exists; but that the breaches did occur prior to that time is certainly not shown by the allegations in the petition. Here it is not an informal or defective allegation which will be aided by intendment, but it is the absence of an allegation which is necessary to constitute a cause of action against the appellees.

But it is claimed that a more liberal practice is prescribed by rule 17, which provides that, " in passing upon such general exceptions, every reasonable intendment arising upon the pleading excepted to shall be indulged in favor of its sufficiency."

The application of that rule to the petition, however, would be as unavailing to appellant as the other. It is only the reasonable intendments that will be indulged in favor of the pleading. Here the breaches occurred some time between March, 1869, and say, August, 1873. Now, under the allegations of the petition, there is no reasonable intendment existing that these breaches occurred prior to the 15th day of August, 1870. There does not seem to have been any effort made to secure the removal of W. H. Warren for maladministration, and that might have been done at any time by establishing these alleged breaches of his bond. His qualification as administrator was in March, 1869. Following the ordinary course of administration, money arising from the sale of lands made to pay debts would not likely come into his hands before August 15, 1870. Besides, two-thirds of the time covered by the administration, and in which the breaches might have occurred, was subsequent to that date.

Recurring to the original proposition, it should be observed that the court does not agree with counsel that the exceptions to the petition passed upon and sustained by the court below amount only, in legal effect, to a general demurrer. Besides a formal general demurrer, the following was among other exceptions interposed by appellees:

"And for special exception thereto they say that there is an administrator *de bonis non* upon the estate of said D. O. Warren, and was at the time of the institution of this suit, to whom and to whose suit they are liable upon their said bond, if at all, and not to this plaintiff."

This is not a general exception which only in a general way challenges the sufficiency of the petition; it goes beyond that, and points out specially wherein the suit should not be maintained as instituted. Tested by the law in force at the time the suit was brought, according to the theory upon which we are now proceeding, this special exception was well taken. Now, if any special reason or fact existed which would exempt this case from the operation of the exception, certainly it was incumbent upon the appellant to allege it. To give a practical illustration of this doctrine: Suppose that appellant had, by amendment, sought to avoid the effect of this exception, it would have been by alleging that the cause of action accrued before the passage of the act of August 15, 1870, if that had been the fact. Such an amendment would have been a complete answer to the exception.

Nor do we think that it admits of any doubt whatever but that this must be considered a special exception. Certainly it points out why the suit cannot be maintained by the appellant; states that there is an administrator *de bonis non* of the estate of D. O. Warren, deceased, who alone has the capacity and right to maintain the action. Now if the facts existed which would authorize the amendment, the exception sufficiently indicated the defect in the case as presented by the petition to enable the appellant to supply the defect by appropriate allegations.

Appellant claims that the action might have been maintained under the provisions of the act of 1870. That is, there was nothing in that act which took from the creditor the right to maintain an action upon the bond of a former administrator for a *devastavit*, a right which was recognized and sanctioned by the common law.

By the terms of the act of 1870, the administrator *de bonis non* is required to " account for all the estate which came into the hands of his predecessor; and shall be entitled to any order or remedy which the court has power to give, in order to enforce the delivery of the estate, *and the liability of the sureties of his predecessor for so much as is not delivered.*" P. D., art. 5738. It also provides that where a subsequent administrator " proceeds against a former one and his sureties for neglect, he shall be entitled to recover the real damage only caused by such neglect." Art. 5739.

It very clearly appears from these provisions that the administrator *de bonis non* could not only maintain an action upon the bond of his predecessor for unadministered effects or property belonging to the estate, but also the value of such as is not delivered. And in such action he is entitled to recover the actual or real dam-

age occasioned by the failure to deliver the property. That this statute authorized the suit by an administrator *de bonis non* upon the bond of his predecessor for a *devastavit* is too plain for controversy.

Then the question arises, that as the statute conferred this right of action upon the administrator *de bonis non*, would that negative the common law right of the creditor to maintain the action?

At common law, or, more properly speaking, in the English practice, the authority or commission of the administrator *de bonis non* only extended to the goods, chattels, rights and credits which belonged to the intestate at the time of his death, and which remained unadministered. Where property of the estate had been converted by the former administrator, that is, where a *devastavit* had occurred, the administrator *de bonis non* could not maintain any action against his predecessor, either individually or on his bond, for the *devastavit*, because after the conversion the property could no longer be considered unadministered assets of the estate. In short, the wastes committed by the former administrator of the property of the estate, as well as the conversion of such property by him, did not in any manner concern the administrator *de bonis non*, whose duty was only to secure and faithfully administer the unadministered assets of the estate. Potts *v.* Smith, 3 Rawle (Penn.), 366, and authorities cited; Beall *v.* New Mexico, 16 Wall., 540.

Hence, in the English practice, as the administrator *de bonis non* could not maintain such suits, and in fact had no right to, or authority over, damages which might be recovered by others for such *devastavit*, no reason existed why the creditor could not maintain the action, and apply the recovery to his debt against the estate. For by so doing he in no way interfered with the administration; but would, on the contrary, aid the administration, by obtaining payment of his debt against the estate out of a fund that had passed beyond the reach of the administrator *de bonis non*.

However, under the act of 1870, the administrator *de bonis non* not only had the right to maintain the suit, but he was required to do so; and the discharge of that duty was regarded of such importance that he was by express enactment "entitled to any order or remedy which the court has power to give," to enforce the liability of the sureties of his predecessor.

All damages recovered, or which by reasonable diligence might have been recovered, by the administrator *de bonis non*, upon the bond of his predecessor, on account of a *devastavit*, are chargeable to him as unadministered assets, and his sureties are liable therefor.

This being true, and there being no authority conferred upon the creditor to maintain such suits by the act, no more reason is perceived for allowing him to interpose by suit, for the collection of this class of claims, than to collect any other character of claims due the estate. The authority to maintain such suit, when not otherwise limited by statute, imports the right to apply the recovery to the payment of his debt. Such a doctrine might, and perhaps would, result in endless confusion as well as loss both to creditors and the estate. It would necessarily result in a general scramble between creditors holding different classes of claims, perhaps, and the administrator *de bonis non*. For amongst the creditors, the first judgment, without regard to the class of the claim, would likely be the first paid; whereas the damages recoverable under that statute were assets in the hands of the administrator, which he was required to administer as other assets. In the discharge of the duty of the administrator *de bonis non* in regard to this particular matter, the creditor is amply secured by his bond. And besides, if he was derelict in the discharge of his duties as administrator, the creditor could have secured his removal.

In our opinion it was not the intention of the legislature that the creditor should be authorized to maintain such suits. Nor do we think the fact that the administrator *de bonis non* and the sureties on his predecessor's bond had confederated together to defraud the estate would authorize the suit by the creditor. He is secured from loss by reason of such combination by the bond of the administrator, and his right to have him removed for maladministration.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted February 16, 1885.]