## J. R. SIMON ET AL. v. MOLLIE MIDDLETON ET AL.

Decided June 29, 1908.

**1.—Wills—Undue Influence—Definition.**

The undue influence which invalidates a will consists of substituting the will of the person exercising it for that of the testator. It is an influence which destroys the free agency of the testator, and places him in a position where he is dominated by another, and which acted directly on his mind at the very time when he executed the will. Persuasion, entreaty, cajolery, importunity, argument, intercession and solicitation are permissible, and can not be held to be undue influence unless they subvert and overthrow the will of the testator and cause him to do a thing that he did not desire to do.

**2.—Same—Undue Influence—Evidence.**

Fraud or undue influence is usually proved by circumstances, but the circumstances must necessarily and logically lead to the inference that fraud or coercion was employed, and that the will does not represent the real desire and intention of the testator. A wide range should be permitted in the evidence.

**3.—Same—Same.**

The execution of wills prior to the one being contested concerning which no undue influence is shown, disposing of property in substantially the same way as in the last will, is relevant and material as showing the absence of undue influence in the execution of the last will, while a sudden and complete change in the disposition of property would demand explanation, unless the change is made in favor of heirs. The fact that some of the children are disinherited and others favored, and the distribution seems unnatural or unreasonable, raises no presumption of undue influence, but such fact may, when taken in connection with other facts, have that effect.

**4.—Same—Same.**

Unreasonable prejudice or erroneous convictions towards one who has a natural claim upon the bounty of the testator is no evidence of fraud or coercion. Such state of mind, to constitute a sufficient reason for a refusal to probate a will, must have been fanned into life or nursed and fostered by a beneficiary. A will must be procured wholly by lying or false representations, made by a beneficiary with the intention of procuring the execution of the will, in order to invalidate it for such fraud.

**5.—Same—Evidence.**

Upon an application to probate a will, the issue being fraud and undue influence on the part of the beneficiaries in procuring its execution, evidence considered, and held irrelevant and immaterial, and insufficient to support the judgment of the court sustaining the contest.

**6.—Same—Subsequent Memorandum—Codicil.**

A memorandum made by a testator subsequent to the date of his will, considered, and held insufficient as a revocation either expressly or by implication, but intended by the testator as a codicil.

ON REHEARING.

**7.—Will—Contest—Statement by Testator—Statute Construed.**

A contest of an application to probate a will is not an "action arising out of any transaction with the decedent" and therefore the provisions of article 2302, Revised Statutes, have no application, and a party to the contest may testify as to statements by the testator.

Appeal from the District Court of Washington County.   Tried below before Hon. Ed R. Sinks.

*W. W. Searcy* and *Hutcheson, Campbell & Hutcheson,* for appellants. —The court erred in refusing to instruct a verdict for the proponents of the will.   Patterson v. Lamb, 21 Texas Civ. App., 512; Barry v. Graciette, 71 S. W., 310-11; McIntosh v. Moore, 22 Texas Civ. App., 22; Wetz v. Schneider, 34 Texas Civ. App., 201; McCall v. McCall, 135 U. S., 172; Hughes v. Rader, 82 S. W., 54; Archambault v. Blanchard, 95 S. W., 834; Cash v. Lust, 44 S. W., 724; Sehr v. Lindemann, 54 S. W., 540; Jocke v. Irvine, 91 Texas, 581; Patterson v. Lamb, 21 Texas Civ. App., 512; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 320; Blanton v. Mayes, 58 Texas, 428; Gulf, C. & S. F. Ry. Co. v. Vieno, 26 S. W., 231; Paxton v. Boyce, 1 Texas, 325; Goree v. Goree, 22 Texas Civ. App., 470; Largen v. State, 76 Texas, 328; Sharpley v. Cooper, 1 Texas App., Civ., sec. 55, p. 27.

The court erred in permitting the witness Wm. Lusk to testify, over objection of proponents, as follows: "In 1906 Mrs. Mollie Middleton showed me a letter written by Mr. Alex Simon, Sr., her father.   The letter was entirely in the handwriting of Alex Simon, Sr., and was addressed to Mrs. Middleton; in that letter Mr. Simon stated that he was going to cut off her water rent and stop her monthly allowance, and, among other things, he stated the following: "that she was having illicit intercourse with that man"—that is the way he understood.   Wicks v. Wofford, 31 Texas, 413; Blade v. Noland, 12 Wendell, 173; 27 Am. Dec., 126; Bagley v. McMickle, 9 California, 430; Anglo-American Packing Co. v. Cannon, 31 Fed. Rep., 313; Wyckoff v. Wyckoff, 16 N. J. Eq., 401; Kennedy v. Cox, 64 Texas, 418; Wetz v. Schneider, 34 Texas Civ. App., 201; Throckmorton v. Holt, 180 U. S., 552; Schier-

baum v. Shemme, 57 S. W., 530; Walton v. Kendrick, 27 S. W., 872; Gordon v. Burris, 43 S. W., 642; Earp v. Edgington, 64 S. W., 42; 16 Cyc., 1214-19; Watermann v. Whitney, 11 N. Y., 157; In re Donovan Estate, 73 Pac., 1081; Calkins v. Calkins, 44 Pac., 579; Johnson v. Brown, 25 Texas Sup., 127; Willis v. McNeil, 57 Texas, 474; Evansich v. Gulf, C. & S. F. Ry. Co., 61 Texas, 28; King Mfg. Co. v. Solomon, 25 S. W., 450; Henslee v. Henslee, 5 Texas Civ. App., 370; Kellogg v. McCabe, 92 Texas, 199.

The court erred in permitting the witness Wm. Lusk, over objection of proponents, to testify as follows: "After reading the letter from Mr. Simon, Sr., to Mrs. Middleton, I went to see James H. Simon. I stated to him that the letter contained the following language: It accused Mrs. Middleton with having intercourse with Jim Osborn. That if the charges made in said letter were true he, as a brother, ought to take a shotgun and go and shoot the top of Osborn's head off; if they were not, that it was his duty as a brother to go and protect Mrs. Middleton against such charges; that she was without any means, had nothing to eat, and that her father was threatening to throw her out of the house, and cut off her monthly allowance, and it was his duty as a brother to go and look after her. Jim replied: 'Go and see pa.'" Dennis v. Neal, 71 S. W., 388-9; Shailer v. Bumstead, 99 Mass., 130; Osgood v. Manhattan Co., 3 Cowen, 612; 15 Am. Dec., 304; Boyd v. Eby, 8 Watts, 66; Hauberger v. Root, 6 Watts and S., 431; Dotts v. Fetzer, 9 Pa., 88; Clark v. Morrison, 25 Pa., 453; Titlow v. Titlow, 54 Pa., 222; 93 Am. Dec., 691; Walkup v. Pratt, 5 Har. & J., 53; Forney v. Ferrell, 4 W. Va., 729; Thompson v. Thompson, 13 Ohio State, 356; Roberts v. Trawick, 13 Ala., 68; Blakey v. Blakey, 33 Ala., 616; Prewett v. Coopwood, 30 Miss., 369; 1 Greenleaf on Evidence, sec. 176; Kellogg v. McCabe, 92 Texas, 199; Thompson v. Bowie, 4 Wallace, 471; 1 Jones on Evidence, 137; 3 Wigmore on Evidence, secs. 1904-6; 1 Wigmore on Evidence, secs. 30, 31, 38, 39, 40, 42, 43, pp. 115, 117.

The court erred in permitting the witness Wm. Lusk, over objection of proponents, to testify as follows: That after reading the letter Mrs. Middleton handed him he went to see Mr. Alex Simon, Sr., and says that he (Lusk) told him that he had read the letter that he (Mr. Simon) had written to Mrs. Middleton, and that it was a shame for a father to write such a letter to a daughter. He insisted that Mr. Simon keep up the allowance that he had been giving her; that she had nothing, and he ought to support her. Mr. Simon wanted to know where she had gotten the money to buy the shoes that Adrian (her son) was wearing. Lusk told him that he had given it to her. He then wanted to know how Lusk was going to get his pay back—that he was not going to pay him. Lusk told him that he did not ask it of him. He then wanted to know why she did not get a support from that man, not calling any names. Lusk told him that he was satisfied that he had nothing to do with her. He replied that he had been told so. Lusk told him that unless he. assisted her the matter would be taken to the lodges, the Masons and Knights of Pythias, he being a member, and that they would take the matter up, and stating to Mr. Simon that Osborn was a good man, and that he did not think that there was anything wrong with him. Kennedy v. Upshaw, 64 Texas, 411; Wetz v. Schneider, 34 Texas Civ. App., 201;

Watermann v. Whitney, 11 N. Y., 162; Jackson v. Kniffen, 2 Johnson, 31; Robinson v. Hutchison, 26 Vermont, 45; Gibson v. Gibson, 24 Mo., 228; Moritz v. Brough, 16 Sargent & Rawle, 403; Smith v. Fenner, 1 Gallison, 171; Stevens v. Vancleve, 4 Washington, 265; Comstock v. Hadlyme, 8 Conn., 263; Dickie v. Carter, 42 Ill., 388; Lewis v. Lewis, 2 Watts & Sergent, 458; In re Estate of Donovan, 73 Pac., 1081; Kellogg v. McCabe, 92 Texas, 199; Thompson v. Bowie, 4 Wallace, 463; 1 Jones on Evidence, 137; Johnson v. Brown, 25 Texas Sup., 127; Evansich v. Gulf, C. & S. F. Ry. Co., 61 Texas, 28; Missouri Pac. Ry. Co. v. Ivy, 71 Texas, 416.

The court erred in permitting the witness Wm. Lusk to testify, over objection of proponents, that nothing had come under his observation showing any immorality on the part of Mrs. Middleton, and in refusing to strike out all the evidence given by said Lusk. Kellogg v. McCabe, 92 Texas, 199; Greenleaf on Evidence, sec. 52; 1 Jones on Evidence, 137; Thompson v. Bowie, 4 Wallace, 463.

The court erred in permitting the witness Ad. von Kalckstein to testify, over objection of proponents, as follows: "I went to see Alex Simon, Jr., to get him to help Cain with fifteen dollars to get Cain out of some trouble that he had gotten into. Alex Simon said that the family could do no more for him. He said that Cain had gotten so often into trouble, and that he (Cain) had been notified that the next time he got into trouble he would have to get out without assistance. I was urgent with Mr. Simon to try and help Cain in this matter. Finally he lost his temper and he told me, 'You want to know how I feel about this matter?' He got excited, because I urged him, and said: 'You want to know how I feel about it?' and said, 'If the sweat of my balls would keep the son of a bitch from starving I would not help him. That is the way I feel about it.'" Kellogg v. McCabe, 92 Texas, 199.

The court erred in permitting the witness Paul Fricke to testify, over objection of proponents, as follows: "I was United States marshal, and living in San Antonio, in 1889 or '90. I was about ready to go to Brownsville or El Paso, I don't remember which, when some party informed me that a lady that I was acquainted with wanted to see me. I was in a hurry, but on my way to the depot I went to see her. I found Mrs. Leah Martin in a little hut in which there were two rooms. She was living in one room and a Mexican woman in the other. She looked to be in a terrible distressing condition—hardly had any clothes on; I think she was barefooted—terrible dirty dress, and without any bed or chairs. I gave her $25 and told her to buy some things." Kellogg v. McCabe, 92 Texas, 199; Johnson v. Brown, 25 Texas Sup., 127; Willis v. McNeil, 57 Texas, 474; Evansich v. Gulf, C. & S. F. Ry. Co., 61 Texas, 28; King Mfg. Co. v. Solomon, 25 S. W., 449; Earp v. Edgington, 64 S. W., 42.

The court erred in permitting contestants, over objection of proponents, to read from the testimony of Morris Fisher, deceased, as follows: "I have known Mrs. Leah Martin for years. I knew her in Houston six or seven years. One Sunday morning I passed her on the street with two children, and she holloaed to me, 'Hello, Morris.' She knew me when I lived in Brenham. I recognized her and spoke to her. I knew

that she took in washing at four dollars per week to support her children." Same authorities.

The court erred in permitting the witness Adrian Middleton to testify, over objection of proponents, that he had heard his Uncle Alex say to his grandmother, "Are the free boarders in?" and his grandmother replied, "Yes." "Well, why don't you get rid of them?" "I don't know how." "Well, put a little poison in the grub; that is a good way to get rid of them." Dennis v. Neal, 71 S. W., 388; Johnson v. Brown, 25 Texas Sup., 127; Evansich v. Gulf, C. & S. F. Ry. Co., 61 Texas, 28; Kellogg v. McCabe, 92 Texas, 199.

The court erred in permitting the witness Adrian Middleton, over objection of proponents, to testify with reference to a row between his mother, Mrs. Middleton, and Alex Simon, Jr., as follows: "That he witnessed a row between them; that his Uncle Alex stepped on his (Adrian's) feet; that he went to see his mother when his Uncle Alex stepped on his feet, and I think she got mad. I think I said something out of the way to him and he slapped at me, but did not hit me. I went to my mother and told her. She got mad, and she went out to the front door. She was standing in the door with her hand out. I went out of the sitting-room just before Uncle Alex did, and I was going to the water stand to get me a little water, and I could look through the hall and see him when he went through. He was in grandfather's room if I am not mistaken. When he came out he shoved mother, and she said something to him, and he slapped her with the back of his hand in the face as she approached." Same authorities.

The court erred in permitting the witness Adrian Middleton, over objection of proponents, to testify that he carried notes from his mother to his grandfather; that the notes were about money; that his grandfather wanted to know why she did not go out and wash and iron; that he asked his grandfather why he did not give her a job in the store. He said, "No, she is able to cook, wash and iron;" that she could go and cook and wash; that he was tired of giving her money. Same authorities.

The court erred in permitting J. P. Buchanan, one of contestant's counsel, while arguing the case to the jury, in behalf of the contestants, to state, "Now, I can take Mr. Searcy to many men in this county who will say that they have heard James and Alex Simon swear to lies." After objection of said language by counsel, and rejection thereof by the court, said Buchanan further said: "Now, gentlemen of the jury, I will close this incident by saying I have not been the prosecuting attorney of your county for fifteen years, and with your grand juries, for nothing;" meaning thereby to indicate to the jury that he knew something about the false swearing himself, and thereby prejudicing the jury against said parties. St. Louis R. R. v. Dickens, 56 S. W., 124; Houston Water Company v. Harris, 3 Texas Civ. App., 475; Texas & Pac. R. R. v. Garcia, 62 Texas, 289; Beville v. Jones, 74 Texas, 148; 1 Greenleaf on Evidence, sec. 461.

Mr. A. Zekind, being a resident of Denver, Colorado, and not having lived in Washington County for more than three years, and it not being shown that he was personally acquainted with all of the jurors, it was error for the court to refuse to permit the proponents to prove, by parties knowing him, that the general reputation of Mr. Zekind for truth

and veracity was good, and that, too, when contestants, by their manner of cross-examining the witness, had sought to throw suspicion on his testimony. Warfield v. Louisville & N. Ry. Co., 55 S. W., 304; Salvini v. Legumazabel, 68 S. W., 183; People v. Rector, 19 Wendell (N. Y.), 569; Central R. R. & Banking Co. v. Dodd, 83 Ga., 507; Postens v. Postens, 3 Watts & S., 127; Paine v. Tilden, 20 Vt., 554; 3 Cyc., p. 17.

*Mathis, Buchanan & Rasberry* and *Lewis & Phillips,* for appellees.— The court did not err in refusing to direct a verdict in favor of the proponents, but did err in not directing a verdict for contestants upon the ground that the undisputed evidence showed that the will in question had, subsequent to its execution, been revoked by the testator by an instrument in writing, written and signed by himself. Grigsby v. Willis, 59 S. W., 574; Estate of Knox, 131 Penn. State, 220; 17 Am. St. Rep., 798; Gaston's Estate, 188 Penn. State, 374; 68 Am. St. Rep., 874; Ferris v. Neville, 89 Am. St. Rep., 486 (see note to this case for comprehensive discussion of every aspect of the question); Dougherty v. Holscheider (Texas Civ.), 88 S. W., 1113.

The trial court properly refused to direct a verdict for the proponents because there was evidence requiring the submission of the issue of fraud and undue influence in the procurement of the will. To the effect that undue influence may be proven by circumstantial as well as direct evidence, see Campbell v. Barrera, 32 S. W., 724; Schouler on Wills, sec. 242. To the effect that extreme age and ill health is a circumstance of weight upon the question of undue influence: Schouler on Wills, sec. 227. To the effect that disinheritance of children by blood is always weighty in determining the issue of undue influence: Schouler on Wills, secs. 165, 238. To the effect that the inequality in the circumstances of those preferred as contrasted with the children disinherited is evidence of undue influence: In re Budlong's Will (N. Y.), 27 N. E., 945; Rivard v. Rivard (Mich.), 63 Am. St. Rep., 570; Marx v. McGlynn, 88 N. Y., 357; Hartman v. Strickler, 82 Va., 237; Walls v. Walls, 99 S. W., 969. To the effect that intense hostility of the beneficiaries under the will against the children disinherited, coupled with opportunity to influence, is evidence of undue influence: Walls v. Walls, 99 S. W., 969; Betts v. Betts (Iowa), 84 N. W., 976; Arnold's Case, 82 Pac., 252; 147 Cal., 583.

Evidence was admissible to show the feelings of J. H. Simon toward his sister, Mrs. Middleton, at the time of the execution of the will in question, as furnishing reason, motive and desire on the part of the said J. H. Simon to unduly influence his father in disinheriting his sister. Kennedy v. Upshaw, 66 Texas, 442-450; Betts v. Betts (Iowa), 84 N. W., 976; In re Arnold's Estate, 147 Cal., 583; 82 Pac., 252.

Testimony was admissible to rebut any inferences, arising from the fact that testator did not revoke the will of 1904 during two years of his life, that, therefore, the same was not procured by undue influence or fraud, by showing that the testator was surrounded by the same hostile influences, animated by the same motives, as were alleged to have induced the will originally. Haines v. Hayden, 95 Mich., 332; 35 Am. St., 566; Shailer v. Bumstead, 99 Mass., 126; Schouler on Wills, sec. 243.

Declarations of the testator made after the execution of a will are admissible upon the question of the existence of insane delusions on the

part of testator, affecting the execution of the will. Contestants alleged that, at the time of the execution of the will, deceased was possessed of insane delusions to the effect that Mrs. Middleton was having illicit relations with Osborne, and that Mrs. Martin was a prostitute and leading an immoral life, and, because of such delusions, made the will in suit. Rivard v. Rivard, 63 Am. St. Rep., 566; Schouler on Wills, sec. 165.

The fact that Alex Simon, Jr., became angry with his sister and struck her in the face was a fact admissible to establish his feeling toward his sister, Mrs. Mollie Middleton, to show his illwill toward her, and thus to show motive and reason why he might be willing to unduly influence her father against her. The other facts adduced were a part of the *res gestae* of the principal fact, and necessary to explain it and give it color and make it understood by the jury. Further, the whole transaction had to be set before the jury in view of the allegation in proponents' second supplemental petition, in which they averred that Alexander Simon, deceased, and the contestants were unfriendly, and that such state of feeling was brought about by the undutiful manner in which the said contestants treated the said Alexander Simon and the abandonment of him and his home by them for many years prior to the making of said will. Kennedy v. Upshaw, 66 Texas, 442-450; Betts v. Betts (Iowa), 84 N. W., 976; In re Arnold's Estate, 147 Cal., 583; 82 Pac., 255; Schouler on Wills, sec. 242; Lucas v. Parsons, 27 Ga., 593.

Testimony was admissible to show that the will was unnatural, and thus was relevant to the question of fraud and undue influence. In re Budlong's Will (N. Y.), 27 N. E., 945; Marx v. McGlynn, 88 N. Y., 357; Rivard v. Rivard (Mich.), 63 Am. St. Rep., 570; Hartman v. Strickler, 82 Va., 237; Walls v. Walls, 99 S. W., 969; Schouler on Wills, sec. 163, 238.

FLY, ASSOCIATE JUSTICE.—This suit grows out of the contest of the will of Alexander Simon, deceased, of date October 4, 1904, which was, at the instance of appellants, probated in the County Court, but probate of which was, on appeal by appellees to the District Court, refused. In the will all the property, except bequests of five dollars each to Mollie Middleton, Leah Martin and Cain Simon, appellees herein, was bequeathed to Julia R. Simon, wife of the testator, with full power of disposal, what remained at her death being bequeathed to Louis Simon, James H. Simon, Alexander Simon, Jr., Rosa Rubenstein and Hannah Folz, children of the testator and Julia R. Simon, and appellants herein. Appellees, who are also children of the testator and Julia R. Simon, contested the will on the grounds that the testator was of unsound mind when he made the will; that the signature to the will was a forgery; that the will was not attested by two witnesses in the presence of the testator, and that it was procured through fraud and undue influence on the part of appellants. The cause was submitted to the jury on the issue of fraud and undue influence alone, and a verdict was returned for appellees and against the probate of the will.

The undue influence which will invalidate a will consists of substituting the will of the person exercising it for that of the testator. It is an influence which destroys the free agency of the testator, and places him in a position where he is dominated by another; which acted directly on

his mind at the very time when he executed the will. As said by this court in Wetz v. Schneider, 34 Texas Civ. App., 201: "Persuasion, entreaty, cajolery, importunity, argument, intercession and solicitation are permissible, and can not be held to be undue influence unless they subverted and overthrew the will of the testator and caused him to do a thing that he did not desire to do."

Fraud or undue influence can be proved by circumstances; in fact, it is usually the case that it can not be directly proved but must be shown by circumstances. Each one of the circumstances, however, must point towards the end sought, and all of them taken together must in a reasonably satisfactory and convincing manner establish such fraud and undue influence. The facts and circumstances must necessarily and logically lead to the inference that fraud or coercion was employed, and that the will does not represent the real desire and intention of the testator. In the investigation of fraud or undue influence there must be a wide range permitted. As said by Underhill in his Law of Wills, section 132: "The nature of the relations and dealings between the testator and the beneficiaries, the extent of the property of the testator, his social and commercial standing, his family connections, the claims of particular persons upon his bounty, the situation of the beneficiaries, social and pecuniary, the situation and the mental condition of the testator, the nature and contents of the will itself, and all the circumstances under which it was executed, may be considered as facts from which fraud and undue influence may be inferred, or by which they may be disproved."

The execution of wills prior to the one being contested, concerning which no undue influence is shown, disposing of the property substantially as in the last will, is relevant and material in showing the absence of undue influence, while a sudden and complete change of the disposition of property would demand explanation, unless the change is made in favor of heirs. The fact that some of the children are disinherited and others favored, and the distribution appears unnatural or unreasonable, raises no presumption of undue influence, but such fact may, when taken with other facts, show undue influence. The financial condition of the legatees may be shown as circumstances bearing upon the question as to whether the will was the product of a mind not unduly influenced by beneficiaries.

If a beneficiary, for the purpose of influencing the mind of the testator, fabricates false and slanderous charges against one who ordinarily would have been a recipient of favors under a will, and such slanders have induced the making of a will by which such person is cut off from any benefits, such slander would constitute important evidence bearing upon the question of fraud and undue influence; but the mere fact of the existence of unreasonable prejudice, or erroneous convictions as to the unworthiness of the contestants, is no evidence of coercion or fraud. Dislike towards one who has a natural claim upon the bounty of the testator, to form a basis for a refusal to probate a will, must have been fanned into life or nursed and fostered by a beneficiary in order to form the basis for fraud or undue influence. A will must be procured wholly by lying or false representations, made by a beneficiary with the intention of procuring the execution of a will, in order to invalidate it for such fraud.

The evidence in this case fails to establish undue influence as above defined. It is true that it was shown that Alexander Simon, Sr., entertained animosity and prejudice against Mrs. Middleton, Mrs. Martin and Cain Simon for many years, and, while it may have ebbed and flowed at times during the years, it was the product and outcome of what the testator considered the outrageous conduct of his daughters and the profligate life of his son. Some grounds were shown for the existence of the anger of the testator towards the disinherited children, but if it had been utterly unfounded it would not invalidate the will unless it was engendered by the appellants, and used by them to utterly destroy the volition of the testator as to the disposition of his property. Patterson v. Lamb, 21 Texas Civ. App., 512; Barry v. Graciette (Texas Civ. App.), 71 S. W., 309. It was his property, accumulated by thrift and enterprise during a long life, and he had the absolute right to dispose of it as he saw fit. No doubt the daughters were poor and needed a portion of the property, and, looking at it from a moral standpoint, it may be that he should not have disregarded the ties of blood and nature, but he had the right legally to give his property to a stranger, or for charitable purposes, if he was capable mentally of making a will, and made it in response to his own desire and volition.

There is nothing to indicate that the fraud of appellants, or either of them, induced the making of the will. The testator knew of the marriage of Mrs. Middleton to a gambler not of her religious faith, over the protest and in utter disregard of the wishes of her parents; he knew that she did not speak to them even while living with her two children in his house. He knew of the conduct of Mrs. Martin—knew that she did not speak to her parents, and did not treat them with any consideration. He knew of the disreputable conduct of his son Cain, and had the right to cut him off on account of his profligacy. If at times in the long years the testator seemed to relent towards his undutiful children, his detestation of their conduct was voluntarily expressed through his wills for years before his death, and he was consistent in his desire to prevent his property from going into the hands of those children. He was a man of strong will and purpose, and acted upon his own convictions and prejudices. But they were his, formed in his own mind, and acted upon through his own strong determination. They were not shown to have been builded upon the fraud and deception of any of the proponents of the will. Cain was the only witness who testified as to one of the proponents telling his father about the conduct of Mrs. Middleton, and he was impeached.

Not only was the burden on appellees to establish undue influence, but it devolved upon them to show that it was operating upon the mind of the testator at the time that he executed the will of 1904, and that the execution of the will was the outcome of an influence amounting to moral coercion, which destroyed his volition and caused him to make a disposition of his property which he did not wish to make. Not one single influence was shown to be operating upon the mind of the testator in this case at the time that he executed the will sought to be probated, except one arising from the convictions of a strong and determined mind. He simply placed in crystalized form the determination lasting through years and founded on facts within his knowledge and under his own ob-

servation. It doubtless is true that he ought to have exercised charity and forbearance towards his erring and undutiful offspring, and it may be that he has acted in a cruel and unnatural manner towards them, but he can not be called to answer for these things before the tribunal of the District Court or of this court. He had the right of disposition of his property after his death, and when he had made such disposition in the exercise of his intelligent volition his action can not be set aside on grounds of morality and the duties he owed to his own offspring.

The contents of the letter written by the testator to Mrs. Middleton two years after the execution of the will should not have been permitted in evidence. The reasons that the testator gave for cutting off an allowance that he had been making to Mrs. Middleton did not tend in any manner to show undue influence in the execution of a will two years before the letter was written. Upon what information and evidence he based the charges against his daughter's character which influenced him in cutting off the allowance does not appear, and the letter had no probative force in showing undue influence in the execution of the will. It is an example that fully sustains the justice of the rule which prohibits proof of declarations of a testator to establish undue influence, when there is no proof of a lack of mental capacity to make the will. Kennedy v. Upshaw, 64 Texas, 411; Wetz v. Schneider, 34 Texas Civ. App., 201. This extends to what Lusk swore that he said to the testator about the contents of the letter and his reply thereto. The evidence did not tend to prove the issue of undue influence or any other in the case. It could have had no effect except to inflame the jury and prejudice them against appellants. Neither should the witness have been allowed to testify that he had never seen any immorality on the part of Mrs. Middleton. The evidence was utterly impertinent to the issues in the case.

The testimony of Ad. von Kalekstein as to a conversation he had with Alex Simon, Jr., with reference to Cain, about 1904, did not tend to prove any issue in the case, and was clearly irrelevant and improper. It was inflammatory, and calculated to engender prejudice against appellants.

The evidence of Fricke as to the financial condition of Mrs. Martin in San Antonio, in 1889 or 1890, was clearly illegal and improper. It could have had no tendency except to inflame the jury against appellants. It had no connection with any issue in the case. What may have been her financial condition fourteen or fifteen years before the will was made was clearly impertinent. It was, on motion to strike it out, held that appellees should not go into details, but the court did not withdraw it from the jury.

The evidence as to the altercations, in 1901, between Mrs. Middleton and Alex Simon, Jr., and as to a conversation about that time between him and his mother, was inadmissible. The issue was that undue influence had been used to procure the execution of a will in 1904 by Alexander Simon, Sr., and none of that testimony had a tendency to establish that issue. There was no issue as to the illwill existing between appellants and appellees; everyone admitted that, and proof of the harrowing disputes between them could have no other tendency than to raise prejudice in the minds of the jury.

We fail to see the relevancy of evidence in regard to Adrian Middle-

ton taking notes to the testator for his mother in which she sought to obtain money and the suggestion of the testator that she should wash and iron. It may have tended to show brutality on the part of the old man, but it did not show any undue influence. We see no place in the trial for this character of evidence. It should have been excluded, not only because of its inflammatory character, but because of its irrelevancy. Kellogg v. McCabe, 92 Texas, 199.

Evidence of what Cain Simon heard Alex and Jim Simon say to each other, after the funeral of the testator, about the existence of three wills, and that they would "give them five dollars," and that "they don't know anything about it; we will give them five dollars and let them go to hell," was palpably inadmissible for any lawful purpose. Knowledge of the existence of three wills on the part of appellants, after the death of their father, had no relevancy as to the issue of undue influence to procure the execution of the will sought to be probated. Mere knowledge that a testator had made a certain will has been held not evidence of undue influence. Chaddick v. Haley, 81 Texas, 617.

The evidence of Burney Parker to the effect that some time in 1904 he was road superintendent, and had Cain Simon in the road gang, and that his father, Alex Simon, Sr., told him to turn Cain loose and he would pay the fine, would perhaps have been admissible as slightly tending to show a more kindly disposition on the part of the father towards his son, but it did not appear whether it was before or after the execution of the will, and could have had little probative force.

In view of another trial, it may be said that the statements made by counsel to the jury, complained of in the eighteenth and nineteenth assignments of error, were improper.

Any testimony tending to show that the proponents had an undue influence over the actions of the testator in other matters would be admissible in connection with any facts tending to show that the influence was exerted in connection with the execution of the last will. But the mere existence of great influence on the part of proponents over the testator would not invalidate the will of 1904, unless it appeared that the influence was exerted to procure the execution of the will. There is nothing to indicate that fact, and consequently all evidence of illwill upon the part of the proponents towards the contestants would be of no force or effect whatever.

If it be true that Cain Simon was excluded from the table with the family, and that he ate in the kitchen, and that his brothers objected to his eating at the table with them, that would not show that undue influence was exerted. He seems to have been excluded on account of his vile habits and vicious life, and not on account of any influence exerted by proponents over the testator. We fail to see the pertinency of the testimony under the circumstances developed by the evidence. All such testimony would open up inquiries as to why certain things were done by the proponents, and lead to such crimination and recrimination that they ought not to be countenanced in a court of justice. That is verified in this case by the fact that evidence that Cain was excluded from the table was answered by evidence that the personal uncleanliness of Cain Simon, together with the fact that he was afflicted with a loathsome disease, caused his exclusion from the family table. Nothing should have been

admitted except evidence which tended in some way to show that the will offered for probate was executed through undue influence exerted upon Alex Simon, Sr., by proponents. Of course, the successful or unsuccessful termination of Mrs. Middleton's business in San Antonio, the character of Mrs. Martin, whether or not she had received assistance from her brothers, mother or sisters, whether or not James H. Simon played cards with Frank Middleton, what Lusk said to James H. Simon about helping Mrs. Middleton, and his reply, whether or not Alex Simon, Jr., was willing "to take down the screen" that hid his private life, did not tend to prove any issue in the case, and should have been excluded.

In a memorandum made in a small book, on July 1, 1906, is a list of the property owned by Alex Simon, Sr., and after the list the statement: "This is all left after paying all due by the store to Mrs. Julia R. Simon, as per second will, and not to have any claim against L. M. Simon or Sam Rubenstein, what is on the books and notes you may find, and if you find that Cain has reformed you may give him a small amount." It is signed by the testator. Appellees claim that the memorandum constituted a revocation of the will of 1904, but we do not think the contention is maintainable. There is not a single word in the memorandum indicating any desire upon the part of the testator to destroy the will sought to be probated. There are no provisions in the memorandum inconsistent with the will of 1904. There being no express revocation of that will, nor any inconsistent provisions in the memorandum amounting to an implied revocation, it must be held that there was no intention to revoke it. Dougherty v. Holscheider, 40 Texas Civ. App., 31. In that case the subject of the revocation of wills by implication is fully discussed.

The memorandum is obscure, but, by a reference to the different wills, we think it is evident that the testator was referring to the will of 1904, which he designated as the "second will." He could not have referred to the joint will of himself and wife, because that was the first will referred to in the testimony. In the will made in 1883, the whole of the property was left to Julia R. Simon during her life, remainder to the appellants and Leah Simon, now Martin, and Cain Simon, and it is evident that it is not the will referred to as "second will," because in that will Cain Simon was provided for, and the provision in the memorandum as to allowing him a small amount if he reformed can not be reconciled with the terms of that will. In the will made in 1899 provision was made for paying Cain Simon ten dollars a month, and in case "he makes a man of himself he shall receive a full share of the estate." In that will everything was left to Mrs. Simon except trivial sums. In the will of July 7, 1900, the sum of two thousand dollars was bequeathed to Cain Simon, and there could be no reason for permitting a small sum to be paid to him if the memorandum referred to that will. In a memorandum made July 15, 1902, the testator seems to have gone back to the will of 1883, because he states that he had made a will, and had left his wife a life estate in the property, but he makes a mistake as to what he had given Cain Simon. We think it clear that the memorandum of 1906 did not have in view that memorandum. In the memorandum of 1902 there was no provision as to the disposition of the bulk of the estate, there being nothing but a recitation of what was provided in a former

will and a provision as to the disposal of the estate after the death of Mrs. Simon. In all the wills there was a provision for Cain Simon except the last, in which he was given the nominal sum of five dollars.

It is reasonable to conclude that the last memorandum was intended to supplement the will of 1904 by giving a list of the property of the estate, and to amend it by giving L. M. Simon and Sam Rubenstein what they owed the estate, and to grant authority to Mrs. Simon to allow Cain a small sum in case of his reformation. It has the character of a codicil to the will of 1904, and we think should be probated with it.

There was no such attack on the reputation of the witness Zekind as would justify a resort to character witnesses to sustain his evidence. He had resided in the county for many years and had been absent only about three years. He was not a stranger in Washington County, but was well known.

The remaining assignments of error are disposed of by what appears hereinbefore in connection with other assignments.

The judgment is reversed and the cause remanded.

#### ON MOTION FOR REHEARING AND FURTHER CONCLUSIONS OF LAW.

Nothing is presented by the motion for rehearing that forms a ground for a change in our original opinion, and we adhere thereto. An opinion is sought on the question of the admissibility of Mollie Middleton's testimony as to a conversation between her and her father, whose will she is seeking to destroy, shortly after the will was executed, in which conversation she would have stated, had she been permitted, that her father had accused her of intimacy with Jim Osborne, and she had denied it, and asked him why he made the accusation, and he stated that he had been told so by Alex Simon, Jr., and that he did not want to have anything to do with it, and then cried.

Article 2302, Revised Statutes, under whose provisions the court held the testimony inadmissible, is as follows: "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." The article is an exception to the original statute, and the exclusion of the evidence of Mrs. Middleton must be justified, if at all, by the terms of the latter part thereof. Can it be said that this suit is one "arising out of any transaction with such decedent?" Of course the suit must be one that arises out of a transaction that the parties had with the decedent, and not a transaction with someone else. In the case of Martin v. McAdams, 87 Texas, 225, it is said, in a case similar to this: "The making of a will is a transaction, but it is not a transaction of the testator with the devisees or legatees. The only participants in it are the testator and those whom he may call upon to witness that it is his last will and testament. The devisees may have nothing to do with it, and may in fact be ignorant of its existence until after the death of the testator."

The general rule in Texas is, that "No person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding, or interested in the issue tried," and, as said in the case cited, it is broad enough to permit any one, no matter what his position towards a suit may be, to testify to any matter that would be permissible were he not so situated, and it is only by an exception, which has been engrafted on the liberal and catholic rule quoted, that an heir or legal representative of a decedent is denied the right to testify under certain circumstances. The rule in Texas is that the terms of the exception will not be extended by judicial construction. Tyson v. Britton, 6 Texas, 222; Roberts v. Yarboro, 41 Texas, 449; Markham v. Carothers, 47 Texas, 21; Collins v. Warren, 63 Texas, 311; Moore v. Wills, 69 Texas, 109; Wallace v. Stevens, 74 Texas, 559; Newton v. Newton, 77 Texas, 508; Martin v. McAdams, 87 Texas, 225.

That as strong reasons exist for excluding the statements of a testator to a disinherited child as to those made to any class of persons can not be denied, but the Legislature has not seen proper to include them within the exception, and we can not do so. This is not an action "by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." This is a transaction by the decedent, but not one that any of the parties to this action had with him. It is simply a contest between legatees as to a deed performed by the decedent without their co-operation. The evidence should have been admitted.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.