**JONES v. SELMAN et al.**

No. 1895.

Court of Civil Appeals of Texas. Waco.

June 24, 1937.

Rehearing Denied Nov. 4, 1937.

1004

T. R. Mears, of Gatesville, and Mc-Clellan, Lincoln & Jones, of Waco,. for appellant.

C. K. Bullard, of Dallas, and John D. Brown, and Tom L. Robinson, both of Gatesville, for appellees.

GEORGE, Commissioner.

P. E. Jones, proponent of the will of his. deceased wife, Martha Jane Jones, appeals from a judgment of the district court of Coryell county on a special issue verdict sustaining a contest of the will on the ground of undue influence.

Appellant says: (1) The evidence is insufficient to sustain the findings of the jury that (a) P. E. Jones, Eulalie Jones, and Treva Jones Stiles, or either of them, exercised undue influence on Martha Jane Jones at the time she executed the alleged will on January 15, 1930, and (b) such undue influence caused Martha Jane Jones to execute such written instrument; (2) the trial court erred in admitting in evidence, over his objections, the following testimony of Dr. W. L. Crosthwait, to wit, "If her condition did not improve or change for the better and continued to same to January 15, 1930, I would state that I do not believe she was mentally capable of resisting undue influence on that date"; and (3) the trial court erred in admitting in evidence a letter written by Martha Jane Jones, within a few days after the death of her son, Warren Murphy, to her daughter, Bessie Selman.

Martha Jane Jones was the mother of three children by her first marriage. They were Warren Murphy, Bessie Selman, and Edna Rice. Warren Murphy died March 28, 1932. She married P. E. Jones in 1894, and became the mother of three living children by him, viz.; Eulalie Jones, Loraine McGintry, and Treva Stiles. The three stepchildren of P. E. Jones left the home of their mother and stepfather in 1908. Eulalie Jones, having never married, lived in the home with her parents. She was of a nervous temperament. Martha Jane Jones died on December 7,

1934, and her will, dated January 15, 1930, was filed for probate on December 14, 1934. This will bequeathed to Warren Murphy, Edna Rice, and Bessie Selman each $500 in cash from the estate of testatrix, and bequeathed the residue of testatrix' estate equally to Eulalie Jones, Treva Jones Stiles, and Loraine Jones McGintry. It further provided that if either Warren Murphy, Edna Rice, or Bessie Selman should die before such will was executed, then such amount was to be divided equally between Eulalie Jones, Treva Jones Stiles, and Loraine Jones McGintry. P. E. Jones notified contestants of the existence of a will soon after their mother's death, but did not send them a copy of the will. Martha Jane Jones was 66 years of age at the time of her death. Dr. Crosthwait had attended her, following an automobile accident, as her physician from November 17 to November 24, 1929, but did not see her after that time.

Accepting as true all the testimony in the record tending in anywise to sustain the jury's findings, and viewing same in its most favorable light, we then may consider as established the following facts: (1) That P. E. Jones did not treat his three stepchildren with either kindness or justice while they remained at home, between the years 1894 and 1908, and on occasions discriminated against them and favored his own children, which conduct on his part made the life of Martha Jane Jones, during that period of time, unhappy and unpleasant; (2) that Martha Jane Jones, in 1910, made a will bequeathing all of her property to all of her children in equal shares; that she at that time made declarations to the effect that she was going to and had provided for her girls, meaning Edna Rice and Bessie Selman; (3) that Martha Jane Jones was on, prior to, and at all times after, January 15, 1930, afflicted with arteriosclerosis, which means high blood pressure, that is, the breaking down of the heart and kidneys and hardening of the arteries. She had Brights' Disease and the symptoms were her heart and stomach. She was nervous, and had been in a sanitarium two or three times for treatment for injuries and diseases; (4) that Martha Jane Jones, on numerous occasions between 1922 and January 15, 1930, stated to her sister that Mr. Jones did not know about the will of 1910; that she was not satisfied with it; that she wanted to change it, but that she did not want Mr. Jones to know; that she wanted to change it in favor of the Jones children because the Murphy children had good homes and did not need it, and she did not know but what the Jones children would need it; that it was their daddy who had made it and she thought they were entitled to it; (5) that the will of January 15, 1930, made an apparently unreasonable and unnatural distribution of her property; (6) that Martha Jane Jones was an intelligent woman; (7) that Eulalie Jones, in 1932, was quarrelsome toward both her father and mother, and that on the occasion of Warren Murphy's death objected to her parents sending help; (8) that Edna Rice, Bessie Selman, Loraine McGintry, and Treva Stiles were in comfortable financial circumstances in 1930, but that Eulalie Jones and Warren Murphy were without any means; that Warren Murphy was a wanderer; (9) that P. E. Jones, at the request of Martha Jane Jones, took pencil memorandum of her will to the president of the bank at Oglesby and had it put in form and typewritten and returned it to her; that she took the will to the home of a neighbor across the street and executed it on January 15, 1930, in the absence of P. E. Jones, and then delivered it to him and he placed it in his safe and kept it there until after her death; (10) Martha Jane Jones signed the will in the presence of Mr. and Mrs. Victor Harper in their home at Oglesby, Tex., on January 15, 1930, and no other person was present at the time of the execution of the will except testatrix and the two witnesses. Mr. and Mrs. Harper signed the will as witnesses at the request of Martha Jane Jones, after she had signed the will in their presence. Testatrix declared it to be her last will and testament at the time she signed it. Neither Mr. nor Mrs. Harper nor Mrs. Jones read the will when it was signed; and (11) that Edna L. Rice and Bessie Selman went to school in Oglesby, Tex., and helped work on the farm and in the house so long as they remained at home. They picked cotton every fall to make money with which to buy their clothing to wear to school the rest of the year. They helped their mother with the housework, including cooking and washing. Appellees contend that the above-mentioned facts and circumstances so viewed establish opportunity, motive, unnatural disposition of property, and submission of the will of Martha Jane Jones to that of P. E. Jones in the execution

of such will, and that same are sufficient to support the jury's findings of the existence of undue influence, and that the will in question was the product thereof.

██ P. E. Jones denied the existence of any hostility on his part toward contestants, and asserted that he was proud of them, and that their relations had been friendly ever since their marriage. He attempted to testify as to the circumstances surrounding the execution of the will in question and as to statements made by Martha Jane Jones at and near the time of its preparation and execution, but such testimony was excluded as being in contravention of the provisions of article 3716, Revised Civil Statutes. Disinterested witnesses, whose testimony is unquestioned and undisputed, testified that Martha Jane Jones was strong-minded and strong-willed up to near the time of her death; that she was an independent thinker and self-willed; and that she never took anybody's advice on anything. The burden was on contestants to plead and prove that the will of January 15, 1930, was the product of undue influence exercised at the time on Martha Jane Jones by P. E. Jones, Eulalie Jones, and Treva Stiles, or one of them; that is, that one of them unduly influenced the execution of such will by acts done or things said prior to its execution, and that such acts done or things said operated unduly on Martha Jane Jones' mind so as to destroy her free agency at the time of the execution thereof, and that the will does not, in fact, express her wishes as to the disposition of her property but the wishes of either P. E. Jones, Eulalie Jones, or Treva Stiles.

██ The record is silent as to the conduct of Treva Jones Stiles toward her mother, stepbrother, and stepsisters, and the effect, if any, of her actions and sayings on her mother. The only mention made of her in the record is that she was a daughter of P. E. Jones and Martha Jane Jones; that she was married and was in comfortable financial circumstances. The only evidence in the record with reference to the actions and sayings of Eulalie Jones is to the effect that she was of a nervous and petulant temperament, and that she, on one occasion in 1932, objected to her parents sending money to Warren Murphy. This testimony shows at most only opportunity and interest, but does not indicate that such conduct and sayings had any effect on Martha Jane Jones one way or the other, and same is not sufficient to raise even a suspicion as to the existence of undue influence or its effective exercise.

██ There is no direct evidence that P. E. Jones ever exercised any undue influence over his wife with relation to the will in controversy or otherwise, or that such influence produced such will. If there is any evidence, it is circumstantial. Can it be reasonably inferred from the hereinabove set out collateral facts and circumstances that P. E. Jones exercised undue influence on his wife with relation to the execution of the will, and that such will speaks his desires and not hers? They show opportunity; the living with his wife in apparent harmony and peace since 1908 and assistance in the preparation of her will. Does this reveal anything unusual or suspicious? Does it connote submission to his will? Does it indicate anything more than natural affection and confidence that often exists between husband and wife who have shared together life's burdens and joys for thirty-six years? Appellees contend that the evidence also establishes motive, and that such motive is founded on his selfish desire to secure all of the property for his children; that he was actuated by such interests in the treatment of his stepchildren while they remained at home prior to 1909. The only evidence in the record as to his feelings toward his stepchildren during the years intervening between 1908 and 1930 is that they visited in his home occasionally, and that he was proud of them. The testimony as to his conduct towards them prior to 1909 is too remote to constitute any evidence of his exercise of any influence on their mother to get her to give her estate to his children instead of dividing same equally among all of her children. The unequal distribution of the property under the will of 1930 does not appear so unreasonable and unnatural as to be expressive of effective exercise of undue influence, when considered in connection with the testimony of the sister of Martha Jane Jones. This testimony accounts for and explains the unequal distribution. She was in a nervous and weakened physical condition on January 15, 1930, but the jury found that she at that time had sufficient mental ability to understand the nature of the business in which she was engaged, the nature and extent of her property, the persons to whom she intended to devise and bequeath it, the persons dependent on her bounty, and the mode of disposition

among them. And this finding is supported by substantial evidence of strong probative force and weight. There is no direct evidence that any one suggested to her what the terms of her will should be; that P. E. Jones, or any one else, ever, at any time, by act or deed, dominated or attempted to dominate her in her actions in any manner whatsoever; that she was ever asked to do or not to do a thing against her will; that she would have made a different will if her free agency had not been destroyed and subverted; · that the provisions of her will were not in accordance with her desires, as expressed by her within a reasonable time before and after its execution; that P. E. Jones ever mistreated her; and there is no evidence of any disposition on the part of P. E. Jones to exercise undue influence on his wife, or of her susceptibility to such influence. Appellant's contention is sustained. Besteiro v. Besteiro (Tex.Com. App.) 65 S.W.(2d) 759; Wilson v. Paulus (Tex.Com.App.) 15 S.W.(2d) 571; McKenzie v. Grant (Tex.Civ.App.) 93 S.W. (2d) 1160; Holmes v. Houston (Tex.Civ. App.) 241 S.W. 1039; Barry v. Graciette (Tex.Civ.App.) 71 S.W. 309; Leahy v. Timon et al. (Tex.Civ.App.) 204 S.W. 1029; Id., 110 Tex. 73, 215 S.W. 951; Wetz v. Schneider, 34 Tex.Civ.App. 201, 78 S.W. 394; Trezevant v. Rains (Tex. Sup.) 19 S.W. 567; Patterson v. Lamb, 21 Tex.Civ.App. 512, 52 S.W. 98; Drewery v. Armstrong (Tex.Civ.App.) 223 S.W. 281; Mayes v. Mayes (Tex.Civ.App.) 159 S.W. 919; Salinas v. Garcia (Tex. Civ.App.) 135 S.W. 588; Maul v. Williams (Tex.Civ.App.) 88 S.W.(2d) 1087; Taylor v. Small (Tex.Civ.App.) 71 S.W. (2d) 895; Morris v. Bailey (Tex.Civ.App.) 16 S.W.(2d) 311; Kophal v. Jantz (Tex. Civ.App.) 297 S.W. 336; Mathews v. Mathews (Tex.Civ.App.) 275 S.W. 226; Whitney v. Murrie (Tex.Civ.App.) 264 S.W. 270; McElhinney v. Swepston (Tex.Civ. App.) 263 S.W. 940; Stolle v. Kanetzky (Tex.Civ.App.) 259 S.W. 657; Fox v. Bierman (Tex.Civ.App.) 257 S.W. 969; Hill v. Crow (Tex.Civ.App.) 241 S.W. 184; In re Fullhas' Estate (Tex.Civ.App.) 228 S.W. 659; Jennings v. Jennings (Tex. Civ.App.) 212 S.W. 772; Navarro v. Garcia (Tex.Civ.App.) 172 S.W. 723; Berry v. Brown (Tex.Civ.App.) 148 S.W. 1117; Helsley v. Moss, 52 Tex.Civ.App. 57, 113 S.W. 599; Simon v. Middleton, 51 Tex. Civ.App. 531, 112 S.W. 441; Pierson v. Pierson (Tex.Civ.App.) 57 S.W.(2d) 633;

Decker v. Koenig (Tex.Civ.App.) 37 S.W. (2d) 378; Hodges v. French (Tex.Civ. App.) 256 S.W. 662; Adkins v. Henson (Tex.Civ.App.) 256 S.W. 967.

■ The proposition and assignment urging error of the trial court in admitting the testimony of Dr. Crosthwait is sustained. The vice in this testimony is threefold. First, it is a mere opinion as to her legal capacity to resist the performance of the act in question, based on a guess or an unsupported assumption that 'no change had taken place in her physical and mental condition, and that she was under the effect of some medication for the alleviation of pain, and is not the opinion of a doctor as to the mental condition of his patient, based on either knowledge, observation, or examination of the patient at the time in question. Second, it is the expression of a legal conclusion as to what degree of mental capacity was necessary to have enabled Mrs. Martha Jane Jones, on January 15, 1930, to have resisted undue influence, which is a matter of law and not of medical science. It is the duty of the court alone to inform the jury as to the legal standard of capacity, meaning of the term "undue influence," and the rules of law by which they are to be governed in determining the sufficiency of the facts given to them by the witnesses. This testimony necessarily included the determination of Dr. Crosthwait of what were the facts with reference to her mental condition on the date in question, and his application of his own legal standard of mental capacity and his understanding of the meaning of the legal term "undue influence" to such facts. Third, it invades the province of the jury on an ultimate fact issue, in that it involves the determination of Mrs. Jones' mental condition at the time in question and the weight and credibility of the testimony of the other witnesses on such matter. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Roth v. Travelers' Protective Ass'n of America, 102 Tex. 241, 115 S.W. 31, 132 Am.St.Rep. 871, 20 Ann. Cas. 97; Pickering v. Harris (Tex.Com. App.) 23 S.W.(2d) 316; Kennedy's Estate v. Richardson (Tex.Civ.App.) 41 S.W.(2d) 95; Purnell v. Gandy, 46 Tex. 190; Dexter v. Hall, 15 Wall. (82 U.S.) 9, 15, 21 L. Ed. 73; Harrison v. Davis (Tex.Civ.App.) 58 S.W.(2d) 1025; Reynolds v. Porter (Tex.Civ.App.) 54 S.W.(2d) 1086; Southern Pine Lbr. Co. v. Whiteman (Tex.Civ. App.) 104 S.W.(2d) 635.

██ The portions of the letter written by Martha Jane Jones, in April, 1932, to Bessie Selman, indicative and expressive of her mentality, mental attitude, and affection toward the parties named therein, and the effect produced on her by their conduct, was admissible as original evidence, under the facts and circumstances of this case, but no part of such letter was competent to prove either the fact of undue influence or that the exercise of such influence produced the will. The portions of the letter consisting of a narration of past occurrences was inadmissible because hearsay. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Vance v. Upson, 66 Tex. 476, 1 S.W. 179; Buchanan v. Davis (Tex. Com.App.) 12 S.W.(2d) 978; McIntosh v. Moore, 22 Tex.Civ.App. 22, 53 S.W. 611; Kennedy v. Upshaw, 64 Tex. 411; Id., 66 Tex. 442, 1 S.W. 308; Johnson v. Brown, 51 Tex. 65; Wetz v. Schneider (Tex.Civ. App.) 96 S.W. 59; ·Marshall v. Campbell (Tex.Civ.App.) 212 S.W. 723; Sloan v. Sloan (Tex.Civ.App.) 32 S.W.(2d) 513; Robinson v. Stuart, 73 Tex. 267, 11 S.W. 275; McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025. The execution of the letter was proved by testimony of parties other than contestants, and it was not inadmissible on the ground that it contravened the provisions of article 3716, for the reason that it did not constitute the giving of testimony by contestant, Bessie Selman, as to any transaction with or statement by Martha Jane Jones, deceased. Martin v. McAdams, 87 Tex. 225, 27 S. W. 255; Olschewske v. Priester (Tex.Com. App.) 276 S.W. 647; Tharpe v. Schmall (Tex.Civ.App.) 44 S.W.(2d) 505; Fertitta v. Toler (Tex.Civ.App.) 43 S.W.(2d) 467; Horst v. Tobin (Tex.Civ.App.) 18 S.W. (2d) 221; Hagelstein v. Blaschke (Tex. Civ.App.) 149 S.W. 718; Haugen v. Johnson (Tex.Civ.App.) 282 S.W. 1115; American Exchange National Bank v. Keeley (Tex.Civ.App.) 39 S.W.(2d) 929; Potter v. Wheat, 53 Tex. 401; Dodson v. Watson (Tex.Civ.App.) 225 S.W. 586; Dean v. Dean (Tex.Civ.App.) 214 S.W. 505; Moores v. Wills, 69 Tex. 109, 5 S.W. 675; Emery v. Emery (Tex.Civ.App.) 75 S.W. (2d) 725.

The other propositions and assignments relate to questions which will not probably recur on another trial, and same are not passed on.

The judgment of the trial court is reversed, and the cause remanded for a new trial.

Opinion adopted by the court.