WILSON et al. v. PAULUS et al.   (No. 9022.)

Court of Civil Appeals of Texas.   Galveston.
Nov. 17, 1927.

Rehearing Denied Dec. 15, 1927.

1. Wills ⬅294, 303(3)—Testimony of subscribing witness, based on attestation clause held admissible and to sustain finding that testator signed will in presence of both subscribing witnesses.

Testimony of subscribing witness in will contest that, though he had no independent recollection of will having been signed by testator in his presence and that of other subscribing witness, he knows, because of the attestation clause, that the other subscribing witness was present, held admissible and sufficient to sustain finding that both subscribing witnesses were present when testator signed will and that both signed will at such time.

2. Wills ⬅306—Negative testimony of subscribing witness and absence of contrary evidence held sufficient to sustain finding that will was not revoked.

Negative testimony of subscribing witness and absence of any evidence suggesting execution of subsequent will or revocation of will offered for probate held sufficient to sustain finding that will was not revoked.

3. Wills ⬅324(3)—That testator's grandson wrote will, was in room at time it was signed, and represented testator subsequently in other legal matters, held not to show "confidential relation" raising issue of undue influence.

That testator's grandson, who was a lawyer, wrote the will, and may have been in room when testator signed it, and that he subsequently represented testator in other legal matters does not show "confidential relation" raising issue of undue influence (citing Words and Phrases, "Confidential Relation").

4. Wills ⬅166(5)—Distribution of estate in will held not so unreasonable as to raise inference of undue influence.

Will which, though not equally distributing estate of testator, recited that those for whom no provision was made had been given share prior to execution of will, which was not con-

tradicted, was not such an unnatural or unreasonable disposition as to raise inference of undue influence.

**5. Wills ⬤◯324(3)—Unfair discrimination between testator's heirs does not raise issue of undue influence.**

That will was unnatural and unreasonable because of unfair discrimination between testator's heirs does not of itself raise issue of undue influence.

**6. Wills ⬤◯166(12)—Circumstances only raising suspicion or possibility of undue influence are insufficient to show undue influence in execution of will.**

Though undue influence in execution of will may be shown by circumstantial evidence, circumstances must be such when taken together as to reasonably justify inference that undue influence was exerted upon the mind of the testator in execution of will, and circumstances which only raise a surmise or suspicion are insufficient.

**7. Wills ⬤◯164(7)—In will contest for undue influence, exclusion of evidence that testator could not read without using magnifying glass was not error.**

In will contest for undue influence, exclusion of testimony that testator's eyesight was so poor that he could only read by using a very strong magnifying glass was not error, where it was only corroborative and did not go to extent of showing that testator could not have read will.

**8. Wills ⬤◯400—Exclusion of testimony that contestant's father, who was son of testator, assisted and was devoted to testator, held not harmful, since not raising issue of undue influence.**

In will contest for mental incapacity and undue influence, offered proof that father of contestants and son of testator was industrious, assisted testator in maintaining estate and was devoted to him, being insufficient to raise issue of undue influence, its exclusion was not harmful to contestants.

**9. Wills ⬤◯164(1)—Exclusion of evidence as to financial standing of testator's daughter held properly excluded in will contest for undue influence by testator's grandson.**

In will contest for undue influence, alleged to have been exercised by grandson, evidence as to value of property owned by testator's daughter, who was one of proponents, was properly excluded, since it could have no possible bearing on issue of undue influence exercised by grandson.

Appeal from District Court, Austin County; M. C. Jeffry, Judge.

Proceeding by Henry Paulus and others to probate the last will and testament of E. B. Wilson, deceased, contested by E. B. Wilson and others. On appeal from a judgment of the county court admitting the will to probate, a judgment was rendered in favor of proponents, and the contestants appeal. Affirmed.

Allen B. Hannay, of Houston, Lee Dittert, of Bellville, and Fred L. Blundell, of Lockhart, for appellants.

C. G. Krueger, of Bellville, and J. W. Ragsdale, of Victoria, for appellees.

PLEASANTS, C. J. This appeal is from a judgment of the court below admitting to probate the last will and testament of E. B. Wilson, deceased, over the contest of appellants on the grounds of imperfect execution of the will, want of mental capacity in the testator, and undue influence exercised over the mind of the testator by the appellees Henry Paulus, his mother, Mrs. Annie C. Paulus, and his father, D. A. Paulus.

The will offered for probate by the executor, Henry S. Paulus, after revoking all former wills of the testator, and giving directions as to the disposition of his body, the payment of his debts, and the placing of a monument over his grave, contains the following provisions:

Paragraph 4 of the will bequeaths to testator's daughter Mrs. Annie C. Paulus two notes of $1,000 each, executed by her husband, D. A. Paulus, in favor of the testator, also a series of twenty-two notes for the aggregate sum of $4,500, and secured by a vendor's lien on lands in Gonzales and Lavaca counties, and further directs the executor "to pay to Mrs. Paulus the sum of $10,000.00 in cash, United States government bonds, or good notes, or enough to make a total of $18,500.00, which I direct and desire that she receive."

The fifth paragraph bequeaths to the testator's daughter Mrs. Effie Kearns a note for $8,000, secured by deed of trust upon property in Austin county, and directs the executor "to pay to Mrs. Kearns the sum of $4,000.00 in cash or good notes, or enough to make the total sum of $12,000.00."

The sixth paragraph bequeaths to the testator's granddaughter Ollie Sanders the sum of $2,500; and the seventh paragraph gives his grandson John William Wilson a like sum.

The eighth, ninth and tenth paragraphs of the will are as follows:

"Eighth: I make no bequests to my beloved grandson, E. B. Wilson, Jr., and my beloved granddaughter, Elizabeth Hellmuth, for the reason that I have already given to them their share of my estate, except I give and bequeath to my beloved grandson, E. B. Wilson, Jr., the pictures of my beloved deceased wife and myself which hang in my bedroom.

"Ninth: I give and bequeath to my beloved daughter-in-law, Minnie Wilson, the property where she now resides in the city of Bellville, in Austin county, Texas, and which is known as the O'Bryant homestead, and contains one acre of land, to remain her property as long as she remains a single woman, but should she marry I direct that said property be equally divided between my four beloved grandchildren,

E. B. Wilson, Jr., John William Wilson, Elizabeth Hellmuth and Ollie Sanders.

"Tenth: All the rest and residue of my estate of which I shall die seized and possessed, should there be any, or to which I shall be entitled at the time of my death, I give and bequeath to my beloved grandchildren, Henry S. Paulus, A. D. Paulus, J. E. Paulus, Mrs. Julia Hale, Roscoe Paulus, and Claude N. Paulus, share and share alike, and direct the same be paid to them by my executor hereinafter named."

The eleventh paragraph appoints his grandson Henry S. Paulus executor of the will, and directs "that no bond or security be required of him as executor and that he be paid the usual and customary fees for his services out of my estate."

The twelfth paragraph directs that no action be had in the county court in the administration of the estate other than the proof and record of the will and the return of an inventory and list of claims.

The will is signed by the testator, E. B. Wilson, Sr., and two subscribing witnesses, O. E. Steck and E. B. Wilson, Jr. Over the signature of these witnesses there is the following written statement:

"Signed, declared and published by E. B. Wilson, as his last will and testament in the presence of us the attesting witnesses, who have hereto subscribed our names in the presence of E. B. Wilson, at his special instance and request, this the 12th day of May, A. D. 1923."

The application of the executor, Henry S. Paulus, to probate the will was contested by the testator's grandchildren E. B. Wilson, Jr., John William Wilson, Mrs. Ollie Sanders, a feme sole, and Mrs. Elizabeth Wilson Hellmuth, joined pro forma by her husband, Marcus Hellmuth, upon the grounds before stated.

The trial de novo in the court below, on appeal from a judgment of the county court admitting the will to probate, resulted in a like judgment after the jury impaneled to try the case had, under peremptory instructions of the trial judge, returned a verdict in favor of the proponent of the will.

We shall not undertake to set out and discuss in detail the various propositions presented in appellants' brief. The grounds upon which a reversal of the judgment is sought may be summarized, as the insufficiency of the proof of the due execution of the will and of its nonrevocation by the testator, the alleged error of the court in refusing to submit the issue of undue influence to the jury, and the refusal of the court to permit the introduction of evidence offered by the appellants.

The execution of the will was testified to by Dr. O. E. Steck, one of the subscribing witnesses. Dr. Steck testified that he signed the will as one of the subscribing witnesses, but did not see all of the will when he witnessed it. He further testified:

"The part of it that I saw was: 'In testimony whereof I have hereunto set my hand this the twelfth day of May, A. D. 1923.' [Signed] 'E. B. Wilson, Sr.' 'Signed, declared and published by E. B. Wilson as his last will and testament, in the presence of us, the attesting witnesses, who have hereto subscribed our names in the presence of said E. B. Wilson, at his special instance and request this the 12th day of May, A. D. 1923.' [Signed] 'O. E. Steck, E. B. Wilson, Jr.' That is the part I had reference to. Because I recognize my signature, from which I know I signed this, and from this statement, saying that I saw E. B. Wilson sign this, and signed it in his presence, I say that I saw it signed. My impression is that this was signed in the back end of the First National Bank, in Bellville, Tex. I cannot say positively whether E. B. Wilson, Jr., was there. Basing my testimony on this paragraph which I just read, E. B. Wilson, Jr., was present. When this instrument was signed, I was 47 years old. I think E. B. Wilson, Jr., must have been about 30 years old; he was over 14 years old. I treated old man E. B. Wilson. I was his family physician about 20 years. I saw him frequently. In my opinion he was not of unsound mind; he was of sound mind. I was well acquainted with him."

After all of the evidence had been introduced, the proponent recalled Dr. Steck and elicited from him the following testimony:

"Of my own knowledge I do not know whether or not Mr. Wilson ever revoked this will."

[1] Appellants very earnestly contend that this testimony is insufficient to show that the will was executed in the presence of both of the subscribing witnesses, and was also insufficient to show that the will had not been revoked by the testator.

We do not think either of these contentions should be sustained. The fact that Dr. Steck had no independent recollection of the will having been signed by the testator in his presence and that of the other subscribing witness, cannot destroy the effect of his positive testimony that because of the statement in the attestation of the will signed by him E. B. Wilson, Jr., was present when the will was signed by the testator and declared by him to be his last will and testament. The substance and effect of the testimony is that, while this witness does not distinctly remember the presence of E. B. Wilson, Jr., at the time the will was executed, he knows that Wilson was present, and so swears, because he made such statement in writing at the time the will was signed. That this testimony was admissible, and, in the absence of any evidence to the contrary, was sufficient to sustain the finding that both the subscribing witnesses were present when the testator signed the will and declared it to be his last will and testament, and both at that time signed the will as subscribing witnesses, cannot be doubted.

[2] We also think the testimony of Dr. Steck that he did not know of his own knowl-

edge "whether or not Mr. Wilson ever revoked this will" is equivalent to a statement that he had no knowledge of a revocation of the will and is ordinarily the only way by which the negative fact of the nonrevocation of a will can be shown. When there is added to this testimony the circumstances that there is no evidence even suggesting the execution of a subsequent will, or the revocation of the will offered for probate, no other reasonable inference can be drawn from the evidence than that the will offered for probate had not been revoked.

[3] We agree with the trial judge that the evidence does not raise the issue of undue influence. In so far as Mrs. Paulus and her husband, D. A. Paulus, are concerned, neither of them were shown to have been present at the execution of the will or near the testator when it was executed. They lived in Lavaca county, some 50 or 60 miles distant from Bellville, in Austin county, where the testator resided and the will was executed. There is not a circumstance shown by the evidence upon which to base any inference that either of them influenced or had an opportunity to control or influence the mind and volition of the testator in making the will.

Appellee Henry S. Paulus, who is a lawyer and a grandson of the testator, wrote the will, and at the time of its execution was somewhere in the bank building in which the signing of the will took place, and may have been in the room with the testator at the time the will was signed; but there is no testimony showing that he procured or directed the execution of the will, or in any way directed or influenced the testator in the disposition of his property. All of the testimony shows that the testator was a man of sound mind and strong and determined character, who had his own convictions and opinions and was not easily influenced by any one.

The only circumstances presented by appellants as sufficient to raise the issue of undue influence by Henry S. Paulus are that he wrote the will, that he represented his grandfather as attorney, and that the will is unnatural, in that it discriminates in the disposition of the testator's property in favor of the Paulus family.

The evidence does show that Henry Paulus represented his grandfather as attorney in two and possibly three other legal matters besides the writing of the will. Those matters consisted of the writing of a deed of trust to secure a loan made by the testator, and the subsequent presentation and establishment of the lien created by this deed of trust in bankruptcy proceedings against the debtor. The third matter was a land suit in which the testator was interested and was represented by Judge C. G. Krueger and Henry Paulus. The bankruptcy proceeding occurred after the execution of the will, and the dates of the other matters are not shown. If all of these transactions had taken place prior to the writing of the will they would fall far short of showing such confidential relations between the testator and Henry Paulus as would raise an issue of controlling influence by him over the mind and will of the testator. Volume 2, Words and Phrases, First Series, p. 1423.

[4] The will, the material portions of which we have before set out, does not appear to us to be such an unnatural or unreasonable disposition of testator's estate as to raise an inference of undue influence in its execution. It does not equally distribute the estate then owned by the testator among his heirs at law, but, in the absence of evidence as to advances theretofore made by the testator to his children and grandchildren, it cannot be said that the will was unnatural or unreasonable. There is no evidence tending to contradict the recital in the will that the testator had prior to its execution given appellants Elizabeth Hellmuth and E. B. Wilson, Jr., their share of his estate.

[5] But if the will can be regarded as unfairly discriminatory between the testator's heirs, and for that reason unnatural and unreasonable, this fact would not of itself raise the issue of undue influence, and, as we have before said, there is an entire absence of evidence of any other fact tending to show that the testator was unduly influenced in the execution of the will.

[6] Undue influence in the execution of a will, like any other fact in judicial investigation, can be shown by circumstances, and can usually be shown only by circumstantial evidence; but the circumstances sufficient to raise such issue must, when taken together, reasonably justify the inference that undue influence was exerted upon the mind of the testator in the execution of the will. Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441.

Circumstances which only show a possibility of undue influence having entered into the execution of the will, and only raise a surmise or suspicion, cannot raise a fact issue under the rule of evidence established in this state. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[7] The court did not err in refusing to admit the testimony offered by appellants to the effect that the testator's eyesight was so poor that he could only read by using a very strong magnifying glass. There was evidence in the case showing that Mr. Wilson's eyesight was not good, and we fail to see the materiality of the rejected evidence, which at most was only corroborative and did not go to the extent of showing that the testator could not have read the will. The fact that the will was not read to or by the testator in the presence of the subscribing witnesses does not tend to show that he was not fully informed as to its contents, when he declared it to be his last will and testament in the presence of the subscribing witnesses.

[8] There is no merit in appellants' complaint of the refusal of the court to permit them to prove that Jesse Wilson, the deceased father of appellants and the son of the testator, was an industrious man and assisted his father in building up and maintaining his estate, and was devoted and kind to his father. Conceding the truth of this offered testimony, it was not sufficient, when taken in connection with all the other circumstances shown by the evidence, to raise the issue of undue influence, and therefore its exclusion by the court was not harmful to appellants.

[9] Appellants also offered testimony to show the value of property owned by Mrs. Paulus in Austin county, and complains of the refusal of the court to admit such evidence. There was no error in this ruling. The financial condition of Mrs. Paulus standing alone could have no possible bearing on the issue of undue influence exercised by Henry Paulus over the mind of the testator in the making of his will.

There is no evidence, nor offer of evidence, to show the comparative value of the property owned by Mrs. Paulus and the property of the contestants, and, if an unequal distribution of the testator's estate would be held to raise the issue of undue influence, the rejected testimony could not have shown such inequality.

What we have said disposes of all the material questions presented in appellants' brief. We have considered all of the propositions presented in the brief, and none of them in our opinion should be sustained.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.