**WILSON et al. v. PAULUS et al.**
No. 9422.

Court of Civil Appeals of Texas. Galveston.
May 22, 1930.

Rehearing Denied June 26, 1930.

**574**

See, also, 15 S.W.(2d) 571.

J. Lee Dittert, of Bellville, and Allen B. Hannay, of Houston, for appellants.

C. G. Krueger, of Bellville, for appellees.

PLEASANTS, C. J.

This litigation arises from a contest of the will of E. B. Wilson, deceased, who was the grandfather of appellant E. B. Wilson, and his brother and two sisters who joined him in the contest.

The will was offered for probate by appellee Henry S. Paulus, the executor named therein who is another grandson of the testator.

The alleged grounds of the contest are imperfect execution of the will, want of mental capacity in the testator, and undue influence over his mind exercised by Henry Paulus, his mother, Mrs. Annie C. Paulus, and his father, D. A. Paulus, both of whom are beneficiaries under the will.

Upon the trial in the court below without a jury, the trial judge at the conclusion of the evidence instructed the jury to return a verdict in favor of the contestees, and upon return of such verdict rendered a judgment probating the will.

The record discloses the following facts:

After revoking all former wills of the testator and giving directions as to the disposition of his body, the payment of his debts, and the placing of a monument over his grave, the will contains the following provisions pertinent to the questions presented by this appeal:

By its fourth paragraph the will bequeaths to testator's daughter Mrs. Annie C. Paulus two notes of $1,000 each, executed by her husband, D. A. Paulus, in favor of the testator, also a series of twenty-two notes for the aggregate sum of $4,500, and secured by a vendor's lien on lands in Gonzales and Lavaca counties, and further directs the executor "to pay to Mrs. Paulus the sum of $10,000.00 in cash, United States government bonds, or good notes, or enough to make a total of $18,-500.00, which I direct and desire that she receive."

The fifth paragraph bequeaths to the testator's daughter Mrs. Effie Kearns a note for $8,000, secured by deed of trust upon property in Austin county, and directs the executor "to pay to Mrs. Kearns the sum of $4,000.00 in cash, or good notes, or enough to make the total sum of $12,000.00."

The sixth paragraph bequeaths to the testator's granddaughter Ollie Sanders the sum of $2,500.00; and the seventh paragraph gives his grandson John William Wilson a like sum.

The eighth, ninth, and tenth paragraphs of the will are as follows:

"Eighth: I make no bequests to my beloved grandson, E. B. Wilson, Jr., and my beloved granddaughter, Elizabeth Hellmuth, for the reason that I have already given to them their share of my estate, except I give and bequeath to my beloved grandson, E. B. Wilson, Jr., the pictures of my beloved deceased wife and myself which hang in my bedroom.

"Ninth: I give and bequeath to my beloved daughter-in-law, Minnie Wilson, the property where she now resides in the city of Bellville, in Austin county, Texas, and which is known as the O'Bryant homestead, and contains one acre of land, to remain her property as long as she remains a single woman, but should she marry I direct that said property be equally divided between my four beloved grandchildren, E. B. Wilson, Jr., John William Wilson, Elizabeth Hellmuth and Ollie Sanders.

"Tenth: All the rest and residue of my estate of which I shall die seized and possessed, should there be any, or to which I shall be entitled at the time of my death, I give and bequeath to my beloved grand children Henry S. Paulus, A. D. Paulus, J. E. Paulus, Mrs. Julia Hale, Roscoe Paulus, and Claude N. Paulus, share and share alike, and direct the same be paid to them by my executor hereinafter named."

The eleventh paragraph appoints his grandson Henry S. Paulus executor of the will, and directs "that no bond or security be required of him as executor and that he be paid the usual and customary fees for his services out of my estate."

The twelfth paragraph directs that no action be had in the county court in the administration of the estate other than the proof and record of the will and the return of an inventory and list of claims.

The will is signed by the testator, E. B. Wilson, Sr., and two subscribing witnesses, O. E. Steck and E. B. Wilson, Jr. Over the signature of these witnesses there is the following written statement:

"Signed, declared and published by E. B. Wilson as his last will and testament in the presence of us the attesting witnesses, who have hereto subscribed our names in the presence of E. B. Wilson, at his special instance and request, this the 12th day of May, A. D. 1923."

The execution of the will was testified to by Dr. O. E. Steck, one of the subscribing witnesses. Dr. Steck testified that he signed the will as one of the subscribing witnesses, but did not see all of the will when he witnessed it. He further testified:

"The part of it that I saw was: 'In testimony whereof I have hereunto set my hand this the twelfth day of May, A. D. 1923.' (Signed) 'E. B. Wilson, Sr.' 'Signed, declared and published by E. B. Wilson as his last will and testament, in the presence of us, the attesting witnesses, who have hereto subscribed our names in the presence of said E. B. Wilson, at his special instance and request, this the 12th day of May, A. D. 1923.' (Signed) 'O. E. Steck, E. B. Wilson, Jr.' That is the part I had reference to. Because I recognize my signature, from which I know I signed this, and from this statement, saying that I saw E. B. Wilson sign this, and signed it in his presence, I say that I saw it signed. My impression is that this was signed in the back end of the First National Bank, in Bellville, Texas. I cannot say positively whether E. B. Wilson, Jr., was there. Basing my testimony on this paragraph which I just read, E. B. Wilson, Jr., was present. When this instrument was signed I was 47 years old. I think E. B. Wilson, Jr., must have been about 30 years old; he was over 14 years old. I treated old man E. B. Wilson, I was his family physician about 20 years. I saw him frequently. In my opinion he was not of unsound mind; he was of sound mind. I was well acquainted with him."

After all of the evidence had been introduced, the proponents recalled Dr. Steck and elicited from him the following testimony:

"Of my own knowledge I do not know whether or not Mr. Wilson ever revoked this will."

Appellants' contention that the evidence raises the issue of undue influence on the part of Mrs. Annie C. Paulus and her husband, D. A. Paulus, is based solely upon the apparent unequal disposition of the estate in favor of Mrs. Paulus. Neither she nor her husband were shown to have been present at the execution of the will. They lived in Lavaca county, some 50 or 60 miles distant from Bellville, in Austin county, where the testator resided and the will was executed. There is not a circumstance shown by the evidence upon which to base any inference that either of them influenced or had an opportunity to control or influence the mind and volition of the testator in making the will.

Appellee Henry S. Paulus, who is a lawyer and a grandson of the testator, wrote the will, and at the time of its execution was somewhere in the bank building in which the signing of the will took place, and may have been in the room with the testator at the time the will was signed; but there is no testimony showing that he procured or directed the execution of the will, or in any way directed or influenced the testator in the disposition of his property. All of the testimony shows that the testator was a man of sound mind and strong and determined character, who had his own convictions and opinions and was not easily influenced by any one.

The only circumstances presented by appellants as sufficient to raise the issue of undue influence by Henry S. Paulus are that he wrote the will, that he represented his grandfather as attorney, and that the will is unnatural, in that it discriminates in the disposition of the testator's property in favor of the Paulus family.

The evidence does show that Henry Paulus represented his grandfather as attorney in two and possibly three other legal matters besides the writing of the will. Those matters consisted of the writing of a deed of trust to secure a loan made by the testator, and, the subsequent presentation and establishment of the lien created by this deed of trust in bankruptcy proceedings against the debtor. The third matter was a land suit in which the testator was interested and was represented by Judge C. G. Krueger and Henry Paulus. The bankruptcy proceeding occurred after the execution of the will, and the dates of the other matter are not shown.

This is the second appeal of this case. The opinion of this court on the former appeal, which considered and adversely to appellants' contentions disposed of all the questions presented by this appeal not hereinafter discussed, is reported in 300 S. W. 661–665. A writ of error was granted by the Supreme Court from our judgment on that appeal affirming the judgment of the trial court, and upon a final hearing on the writ our judgment and that of the trial court were reversed and the cause remanded to the trial court for a new trial.

On the second trial in the court below, from which this appeal is prosecuted, the evidence was the same as that presented on the trial from which the first appeal was taken, with the additional testimony hereinafter indicated.

The opinion of the Commission of Appeals reversing our judgment on the former appeal is reported in 15 S.W.(2d) 571, 573. As shown in that opinion, the only ground upon which the reversal was based was, in the language of the opinion, "that there is no evidence in this record to show that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will, as required by subdivision 4 of article 3348, R. C. S. of Texas, 1925, in that the testimony wholly fails to show the genuineness of the signature of more than one of the subscribing witnesses to the instrument offered for probate."

To meet the insufficiency in the evidence pointed out by the Supreme Court, the contestees on the trial from which this appeal proceeds placed several witnesses on the stand, each of whom testified that one of the signatures to the attesting clause in the will

was the genuine signature of E. B. Wilson, Jr. All of these witnesses testified to the genuineness of the signature of the testator.

Mr. Ernest Vogalpoh, a bank cashier, testified:

"This signature down here below the attesting clause is the signature of E. B. Wilson, Jr. I know Mr. E. B. Wilson, Jr., and have seen him write. I went to school with him and have seen his write."

Mr. Lee Weige, another bank cashier, testified:

"I am connected with the First National Bank of Bellville, Texas, and have been connected with it for two years. Before that, I was connected with the Austin County State Bank at Bellville, Texas. While I was connected with that Bank, both E. B. Wilson, Sr., and E. B. Wilson, Jr., did business with it. I was at the Bank when both Mr. E. B. Wilson, Sr., and E. B. Wilson, Jr., did business there and have seen them write. I knew their handwriting when I saw it. I saw them write frequently. I recognize the signature at the bottom of the instrument purporting to be the last Will and testament of E. B. Wilson, Sr., as the signature of Mr. E. B. Wilson, Sr. I recognize the signature here of E. B. Wilson, Jr., under the attesting clause. That is his signature."

■ This testimony was uncontradicted, and its sufficiency to show the genuineness of the signature of the subscribing witness cannot be questioned. But appellants contend that it was not admissible over their objection that it was not the best evidence, because E. B. Wilson, Jr., whose signature was sought to be proven by these witnesses, "was present in the court room and within the jurisdiction of the court."

■ The record does show that E. B. Wilson was present in the courtroom, but it further shows, as before stated, that he was one of the contestants of the will, having, joined by his brother and sisters, instituted the contest. The rule as to primary and secondary evidence can have no application when the issue sought to be proven is the genuineness of the signature of an opposing party to the suit who has by his pleadings denied the execution of the instrument purporting to have been executed by him. We do not think this application of the rule should be changed because of article 3716 of our Revised Statutes (1925), which provides that, "in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party." Conceding that this statute is properly construed as prohibiting the appellant E. B. Wilson, Jr., from testifying that the signature to the attesting clause in the will is not

his signature, he could have offered the testimony of other witnesses acquainted with his signature in contradiction of the testimony on this issue introduced by the appellees. He cannot by invoking the cited statute force appellees to make him their witness on the issue of the genuineness of his signature. To hold otherwise would be an unequal application of the cited statutory rule which might often defeat the evident and salutary purpose of the statute.

Appellants offered some additional testimony on the trial below corroborative of the testimony on the former trial as to the defective eyesight of the testator. This additional testimony adds nothing to that on the former trial, which showed that Mr. Wilson, the testator, could only read by using a strong magnifying glass held close to the writing or print. Based upon this testimony, appellants very earnestly contend that the due execution of the will was not shown because the record fails to show that the will was read to the testator or in his presence and hearing at any time before its execution.

This contention was urged upon the former appeal and was passed upon by this court and the Supreme Court adversely to appellants.

■ There is nothing in the statute which requires a will to be read to the testator in the presence of the subscribing witnesses. The opinion of the Commission of Appeals before cited expressly holds that the attestation clause in this will is sufficient to show its due execution; the only ground upon which our judgment on the former appeal was reversed being the lack of evidence to show the genuineness of the signature of the witness whose affidavit in proof of the due execution of the will was not produced by the proponents.

■ The case relied on by appellants, to support their contention that the due execution of the will was not shown because there was no evidence that the will was read by or to the testator or that he knew its contents at the time of its execution, is the case of Kelly v. Settegast, 68 Tex. 13, 2 S. W. 870, 873. The facts upon which the holding in the opinion in the Kelly Case is based are not present in this case. The testator in that case could not read or write, and executed the will by making his mark. He was on his deathbed at the time the will was executed. There was sufficient evidence to raise the issues of fraud and undue influence in the execution of the will. The following quotation from the opinion will show its inapplicability to this case:

"In the case before us the paper claimed to be the will of Kelly was written by the person who under it would take one-half of his estate, which seems to be considerable, though, at the suggestion of one of the persons who subsequently became a subscribing witness, it was copied by another person.

The deceased was incapable of ascertaining its contents by inspecting it, and it is an unnatural will in that it gives all of his estate to strangers to his blood, and ignores the claims which children have on parental affection, however much they may have wandered from a correct course of life.

"In such a case we are of the opinion that it should be shown that the testator correctly understood the contents of the paper which he signed, and that the mere formal proof of the execution, of the paper is not enough to entitle it to probate. Harrison v. Rowan, 3 Washb. 585, Fed. Cas. No. 6141; Beall v. Mann, 5 Ga. 469; Harris v. Harris, 53 Ga. 683; Rollwagen v. Rollwagen, 63 N. Y. 517; Wheeler v. Alderson, 3 Hagg. 574; Billinghurst v. Vickers, 1 Phillim. 187, 199; Paske v. Ollat, 2 Phillim. 321; Schouler, Ex'rs, 75; Williams, Ex'rs, 23; 3 Redf. Wills, 47; 1 Redf. Wills, 529.

"This case comes before us surrounded with facts which call for clear proof that Kelly knew the contents of the paper offered for probate. The deceased was in poor health. He was surrounded by those who take benefit under it. It is not shown that he gave any instructions in regard to a will. It was written by one who was deeply interested in having such a will made. The making of it was kept secret from his only living child, though she seems to have been in the same house. One taking under it, in part, at least, suggested who should be present at its execution; and it is unnatural, in that it denies to those most nearly related to the deceased any part of his estate, and was executed by one not in possession of means within himself to ascertain its contents."

In our opinion on the former appeal of this case we held that there was no evidence raising the issue of fraud or undue influence. That holding was adopted in the opinion of the Commission of Appeals, and expressly approved by the Supreme Court.

In our opinion the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.